[No. B227697. Second Dist., Div. Three. Nov. 4, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON EVANS, Defendant and Appellant.

COUNSEL

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Blythe J. Leszkay and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

Officers stopped defendant and appellant Vernon Evans after they observed him commit traffic violations. When Evans refused to comply with a command to exit his automobile, officers broke the vehicle's window, "Tased" and pepper sprayed him, forcibly removed him from the car, and arrested him for interfering with a police investigation. A warrantless search of the vehicle

at the scene revealed 11 empty sandwich baggies and $65 in cash, but no contraband. A second warrantless search of the car at an impound yard revealed cocaine hidden in an air vent. After the trial court denied Evans's motion to suppress the baggies, cash, and cocaine, Evans pleaded no contest to violating Health and Safety Code section 11352, subdivision (a). Because the searches of his vehicle were not authorized under either the search incident to arrest exception to the warrant requirement (*Arizona v. Gant* (2009) 556 U.S. 332 [173 L.Ed.2d 485, 129 S.Ct. 1710] (*Gant*)) or the automobile exception, they violated the Fourth Amendment. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

An information filed on November 19, 2009, charged Evans with the sale, transport, or offer to sell a controlled substance (Health & Saf. Code, § 11352, subd. (a)) (count 1); possession of cocaine base for sale (Health & Saf. Code, § 11351.5) (count 2); and misdemeanor resisting, obstructing, or delaying an officer (Pen. Code, § 148, subd. (a)(1)) (count 3). It was further alleged that Evans had served two prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).

1. *Motion to suppress.*

Evans moved to suppress evidence on the ground that the warrantless searches of his vehicle violated the Fourth Amendment. (Pen. Code, § 1538.5.) A hearing was conducted, at which the following evidence was adduced.

a. *People's evidence.*

On the evening of September 27, 2009, Los Angeles Police Department Gang Enforcement Officer Kevin Currie and his partner, Officer Prodigalidad,[1] were on patrol in Los Angeles when they observed Evans driving a black car northbound on West Boulevard, approaching Slauson Avenue. Evans turned eastbound on Slauson without signaling, a violation of the Vehicle Code. Evans's driving was erratic. When making the turn onto Slauson, Evans entered the middle of the second lane. He veered to the left, veered to the right, veered back to the left, and then veered so far to the right that he nearly hit the curb. He made a right turn onto Brynhurst Avenue, again veering to the left and then to the right. Evans stopped "on the curb just south of Slauson."

---

[1] Officer Prodigalidad's first name is not reflected in the record.

Due to Evans's erratic driving and the traffic violation, Officers Currie and Prodigalidad pulled up immediately behind Evans's car and exited their patrol vehicle. Currie approached the driver's side, while Prodigalidad approached the opposite side, where passenger Maurice Cash was seated. Evans appeared "very nervous." He was attempting to use a cellular telephone, and his hands were shaking. Currie told Evans to put the phone down, turn off the engine, and roll down his window. Evans complied, partially opening the window.

Evans's nervousness, coupled with the facts that the stop occurred at night, in an area claimed as the territory of the Rolling 60's criminal street gang, prompted Currie to ask Evans to step out of the car. Evans did not comply, but instead asked why he had been stopped. Currie explained the basis for the stop. Currie and Evans "went back and forth," with Currie asking Evans to exit the vehicle at least 10 times, and Evans repeatedly asking why he had been stopped. Evans asked to speak to a supervisor. Currie replied that a supervisor was on the way. Evans's reluctance to exit the vehicle appeared unusual to Currie; in his experience, most motorists comply with a direction to exit their cars "once you explain everything to them as [he] did." As Currie and Evans conversed, Evans continued to appear exceptionally nervous. Evans's voice "shuddered" and cracked. His hands continued to shake. Currie—who had been an officer for more than eight years and had conducted over 1,000 traffic stops—explained that Evans "appeared more nervous than most people I've ever come in contact with on a traffic stop." Evans's refusal to exit his car indicated to Currie that "something was wrong."

Currie told Evans he would use pepper spray or a Taser if Evans continued to refuse to get out of his car. Evans continued to refuse. When additional police units arrived approximately 10 minutes later, Currie sprayed a small amount of oleoresin capsicum spray into the car through the window, which was open approximately one-half inch. Evans rolled up the window and remained in the car, staring forward. Another officer broke the driver's side window. Evans was Tased and removed from the car. He was placed facedown on the ground, with officers on top of him, and arrested for interfering with an investigation (Pen. Code, § 148) based on his refusal to exit his automobile.

After Evans was immobilized on the ground, Officer Prodigalidad searched Evans's car. He discovered 11 clear, empty sandwich baggies and approximately $65 in cash in the vehicle's front center console. The car was taken to the police impound yard. Evans was apparently taken to the hospital.

Approximately 10 minutes after leaving the scene, Officer Currie arrived at the police station and performed background checks on Evans and Cash. Within five minutes he learned that Cash was on parole, Evans had previously been on probation, and Evans had previously been arrested for murder.[2] Police conducting a search of Evans's vehicle related to that earlier arrest had discovered a firearm in the car's air vent. After Currie ascertained that Prodigalidad had not searched the vehicle's air vents, both officers went to the impound yard and conducted a second search of the car, where they discovered rock cocaine in the air vent. Their decision to search was due to Evans's behavior, the "totality" of the circumstances of the traffic stop, and the fact that a gun had previously been discovered in the air vent of Evans's vehicle.

b. *Defense evidence.*

The general manager of the tow yard testified that Evans's vehicle had been inventoried by a company employee assigned to drive the car from the site of the stop to the yard. That inventory listed only the items which were in plain view in the car. The inventory did not list cocaine.

According to defense counsel's representation at the hearing below, Evans picked the car up from the impound lot the following day.

c. *The trial court's ruling.*

The trial court concluded that the initial search of the vehicle was justified as a warrantless search incident to arrest. The court explained, "We have the search of the vehicle incident to arrest when Mr. Evans refused to get out of the car" and "that is an appropriate search under the circumstances . . . ." The court further concluded that the second search at the impound yard was justified under the "automobile exception" to the Fourth Amendment's warrant requirement. In the court's view, Evans's extreme nervousness, his unwillingness to exit the vehicle, the baggies found in the console, his history of hiding a gun in a vehicle's air vent, and his passenger's parole status, established probable cause for the officers to believe contraband or evidence of a crime was present in the car. Although the vehicle was in an impound lot, Evans, or his representative, was free to reclaim it at any time. Accordingly, the court denied the motion to suppress.

2. *Guilty plea and sentence.*

After his motion to suppress was denied, Evans pleaded no contest to count 1, the sale, transportation, or offer to sell a controlled substance (Health & Saf.

---

[2] It appears that Evans was not charged with the murder.

Code, § 11352, subd. (a)). Pursuant to a negotiated disposition, the trial court suspended imposition of sentence and placed Evans on probation for a period of one year pursuant to Proposition 36, on condition he serve four days in county jail, with credit for four days served. The court dismissed the remaining two counts and imposed a restitution fine, a suspended probation restitution fine, a court security fee, a criminal conviction assessment, a laboratory analysis fee, and a related penalty assessment. Evans appeals, urging that the trial court erred by denying the suppression motion.

## DISCUSSION

### 1. *Applicable legal principles and standard of review.*

■ The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. (U.S. Const., 4th Amend.; *Davis v. United States* (2011) 564 U.S. ___, ___, ___ [180 L.Ed.2d 285, 131 S.Ct. 2419, 2423, 2426] (*Davis*); *People v. Diaz* (2011) 51 Cal.4th 84, 90 [119 Cal.Rptr.3d 105, 244 P.3d 501].) Warrantless searches are presumed to be unreasonable, " 'subject only to a few specifically established and well-delineated exceptions.' " (*People v. Diaz, supra*, at p. 90; *Gant, supra*, 556 U.S. at p. 338 [129 S.Ct. at p. 1716].) The prosecution bears the burden of demonstrating a legal justification for such a search. (*People v. Redd* (2010) 48 Cal.4th 691, 719 [108 Cal.Rptr.3d 192, 229 P.3d 101]; *People v. Superior Court (Nasmeh)* (2007) 151 Cal.App.4th 85, 101 [59 Cal.Rptr.3d 633].) If there is a legitimate reason for a search or seizure, an officer's subjective motivation is generally irrelevant. (*Kentucky v. King* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 865, 877, 131 S.Ct. 1849] [the high court's cases " 'have repeatedly rejected' a subjective approach, asking only whether 'the circumstances, viewed *objectively*, justify the action' "]; *Whren v. United States* (1996) 517 U.S. 806, 811–813 [135 L.Ed.2d 89, 116 S.Ct. 1769]; *People v. Lomax* (2010) 49 Cal.4th 530, 564 [112 Cal.Rptr.3d 96, 234 P.3d 377].) We evaluate challenges to the admissibility of a search or seizure solely under the Fourth Amendment. (*People v. Carter* (2005) 36 Cal.4th 1114, 1141 [32 Cal.Rptr.3d 759, 117 P.3d 476].)

When reviewing the denial of a suppression motion, we defer to the trial court's express or implied factual findings if supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Lomax, supra*, 49 Cal.4th at p. 563; *People v. Redd, supra*, 48 Cal.4th at p. 719; *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1057 [96 Cal.Rptr.3d 696].) We will affirm the trial court's ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529 [40 Cal.Rptr.3d 422].)

## 2. *The trial court erred by denying the suppression motion.*

■ The initial stop of Evans's vehicle[3] and the command that Evans exit the car did not violate the Fourth Amendment, a conclusion Evans does not challenge. Officer Currie testified that Evans was driving erratically and committed a traffic violation by failing to signal when turning.[4] " 'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' [Citation.]" (*People v. Lomax, supra,* 49 Cal.4th at p. 564; see *Whren v. United States, supra,* 517 U.S. at p. 810.) "Once a vehicle has been detained in a valid traffic stop, police officers may order the driver and passengers out of the car pending completion of the stop without violating the Fourth Amendment." (*People v. Lomax, supra,* at p. 564, italics omitted; see *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111 [54 L.Ed.2d 331, 98 S.Ct. 330]; *People v. Hoyos* (2007) 41 Cal.4th 872, 892–893 [63 Cal.Rptr.3d 1, 162 P.3d 528].) The parties appear to agree that the searches of Evans's vehicle could not have been justified as inventory[5] or parole[6] searches, a conclusion with which we are in accord.

---

[3] Evans stopped his vehicle at the curb although the officers did not activate the police cruiser's lights and siren. There is no dispute, however, that the encounter was a traffic stop.

[4] In *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430, 146 P.3d 965], the court observed in dicta that the People had conceded the defendant's failure to signal when turning or pulling to the curb, standing alone, would not have justified a vehicle stop, because no other vehicles were affected. (*Id.* at p. 131; see, e.g., *People v. Logsdon* (2008) 164 Cal.App.4th 741, 746 [79 Cal.Rptr.3d 379]; Veh. Code, § 22107.) The People made no such concession here, and Evans did not challenge the validity of the stop below, which was additionally based on his erratic driving.

[5] When a vehicle is lawfully impounded, a warrantless inventory search conducted pursuant to a standardized procedure is constitutionally reasonable. (*South Dakota v. Opperman* (1976) 428 U.S. 364, 376 [49 L.Ed.2d 1000, 96 S.Ct. 3092]; *People v. Williams* (2006) 145 Cal.App.4th 756, 761 [52 Cal.Rptr.3d 162].) Such a search must be carried out "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Colorado v. Bertine* (1987) 479 U.S. 367, 375 [93 L.Ed.2d 739, 107 S.Ct. 738]; see *Florida v. Wells* (1990) 495 U.S. 1, 4–5 [109 L.Ed.2d 1, 110 S.Ct. 1632].) "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells, supra,* at p. 4; see *People v. Redd, supra,* 48 Cal.4th at p. 722; *People v. Williams* (1999) 20 Cal.4th 119, 138 [83 Cal.Rptr.2d 275, 973 P.2d 52]; *People v. Torres* (2010) 188 Cal.App.4th 775, 788 [116 Cal.Rptr.3d 48].) There was no evidence that either search was an inventory search conducted pursuant to standardized criteria. Currie did not testify that the initial search of the vehicle was conducted pursuant to a standardized inventory procedure. It was undisputed that the officers conducted the second search at the impound yard in order to discover incriminating evidence, not as an inventory search. For example, when asked whether he routinely searched a vehicle's air vent, Officer Currie replied, "Well, this isn't routine. These circumstances were, I believe, different than most other routine stops." Accordingly, neither search may be considered valid as a lawful inventory search. (See *People v. Nottoli* (2011) 199 Cal.App.4th 531, 545–546 [130 Cal.Rptr.3d 884].)

[6] The officers did not know Cash was on parole at the time they initially searched the car, and the first search was therefore not justified as a parole search. (See *People v. Brendlin* (2008)

We therefore turn to consideration of whether the searches were valid under the search incident to arrest or automobile exceptions to the warrant requirement. The initial search, of course, revealed only baggies and cash, not cocaine. But the existence of the baggies factored heavily into the trial court's subsequent determination that the search at the impound yard—which did unearth cocaine—was constitutionally permissible. Accordingly, we consider the legality of both searches.

    a.   *The searches did not fall within the exception for searches incident to arrest.*

Contrary to the trial court's ruling, the first search was not a valid search incident to arrest. In *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the United States Supreme Court held that a police officer who makes a lawful arrest may conduct a warrantless search of an arrestee's person and the area within his or her immediate control. (*Id.* at p. 763; *Davis, supra,* 564 U.S. at p. ___ [131 S.Ct. at p. 2424].) The *Chimel* exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." (*Gant, supra,* 556 U.S. at p. 338 [129 S.Ct. at p. 1716].) In *New York v. Belton* (1981) 453 U.S. 454, 458–459 [69 L.Ed.2d 768, 101 S.Ct. 2860] (*Belton*), the court extended *Chimel* and held that when a police officer has made a lawful custodial arrest of a vehicle's occupant, the officer might, " 'as a contemporaneous incident of that arrest, search the passenger compartment' " of the vehicle. (*Davis, supra,* at p. ___ [131 S.Ct. at p. 2424]; see *Belton, supra,* at pp. 459–460.) Until 2009, *Belton* was widely understood to have established a "simple, bright-line rule" that automobile searches incident to arrests of recent occupants were constitutionally valid *regardless* of whether the arrestee was within reaching distance of the vehicle at the time of the search. (*Davis, supra,* at p. ___ [131 S.Ct. at p. 2424]; see *Gant, supra,* at p. 341 [129 S.Ct. at p. 1718].)

In 2009, in *Gant,* the high court rejected this sweeping interpretation of *Belton. Gant* reasoned that "[t]o read *Belton* as authorizing a vehicle search

45 Cal.4th 262, 272–273 [85 Cal.Rptr.3d 496, 195 P.3d 1074]; *People v. Sanders* (2003) 31 Cal.4th 318, 322, 330–333 [2 Cal.Rptr.3d 630, 73 P.3d 496]; *In re Jaime P., supra,* 40 Cal.4th at pp. 130–131.) The officers had learned that Cash was on parole by the time they conducted the *second* search. The California Supreme Court is currently considering whether, when conducting a vehicle search authorized by a passenger's parole condition, police may search areas of the vehicle's interior that are reasonably accessible to the passenger. (*People v. Schmitz* (2010) 187 Cal.App.4th 722 [114 Cal.Rptr.3d 490], review granted Dec. 1, 2010, S186707.) Regardless of the eventual resolution of the issue presented in *Schmitz,* in the instant matter Cash was no longer in the automobile when the second search was conducted, making the parole search exception inapplicable.

incident to every recent occupant's arrest," even when the arrestee was out of reach of the passenger compartment, would "untether the rule from the justifications underlying the *Chimel* exception." (*Gant, supra*, 556 U.S. at p. 343 [129 S.Ct. at p. 1719].) Such a broad reading of the search incident to arrest exception would "seriously undervalue[] the privacy interests at stake." (*Id.* at pp. 344–345 [129 S.Ct. at p. 1720].) The court explained: "It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." (*Ibid.*, fn. omitted.)

■ The court adopted a "new, two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.' [Citation.]" (*Davis, supra*, 564 U.S. at p. ___ [131 S.Ct. at p. 2425]; see *Gant, supra*, 556 U.S. at p. 343 [129 S.Ct. at p. 1719].) *Gant* noted that the second prong of the test flowed not from *Chimel*, but from Justice Scalia's concurrence in *Thornton v. United States* (2004) 541 U.S. 615, 632 [158 L.Ed.2d 905, 124 S.Ct. 2127], and was justified by "circumstances unique to the vehicle context." (*Gant, supra*, 556 U.S. at pp. 335, 343 [129 S.Ct. at pp. 1714, 1719]; see also *People v. Osborne, supra*, 175 Cal.App.4th at p. 1064.) Where neither justification is present, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Gant, supra*, 556 U.S. at p. 351 [129 S.Ct. at pp. 1723–1724].)

Here, the searches did not fall within the first prong of the *Gant* test.[7] When the initial search of the vehicle was completed, Evans had been Tased and detained, and was lying facedown on the ground outside the vehicle, with officers on top of him. Plainly, he did not have access to the car's interior.[8]

---

[7] The searches occurred on September 27, 2009, approximately five months after the decision in *Gant* was issued.

[8] Although the record is not entirely clear, it appears that the passenger, Cash, was no longer in the car when the search was conducted. The People do not contend the search was justified

The second search was conducted at the impound yard, while Gant was presumably in the hospital, or at least nowhere near the vehicle.

Nor was it reasonable for the officers to believe evidence relevant to Evans's crime of arrest—interfering with a police investigation in violation of Penal Code section 148—might be found in his automobile. In *Gant*, the defendant was arrested for driving with a suspended license. (*Gant, supra*, 556 U.S. at p. 335 [129 S.Ct. at p. 1714].) The high court found it unreasonable to believe that evidence of this crime might be found in his car. (*Id.* at p. 343 [129 S.Ct. at p. 1719].) The court explained: "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." (*Ibid.*) By way of example, the court cited *Atwater v. Lago Vista* (2001) 532 U.S. 318 [149 L.Ed.2d 549, 121 S.Ct. 1536], in which the petitioner was arrested for a misdemeanor seatbelt violation, and *Knowles v. Iowa* (1998) 525 U.S. 113 [142 L.Ed.2d 492, 119 S.Ct. 484], in which the petitioner was stopped for speeding. (*Gant, supra*, at pp. 343–344 [129 S.Ct. at p. 1719].) The court reasoned that in other cases, "including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." (*Gant, supra*, at p. 344 [129 S.Ct. at p. 1719]; see *People v. Osborne, supra*, 175 Cal.App.4th at p. 1065.) In *Belton*, the crime of arrest was unlawful possession of marijuana; in *Thornton*, the defendant was arrested after an officer found drugs in his pocket. (*Belton, supra*, 453 U.S. at p. 456; *Thornton v. United States, supra*, 541 U.S. at p. 618.) *Gant* concluded that, unlike in *Belton* and *Thornton*, in which the defendants "were arrested for drug offenses, Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." (*Gant, supra*, at p. 344 [129 S.Ct. at p. 1719].)

*Gant* did not otherwise elaborate on the circumstances under which it would be reasonable to believe offense-related evidence might be found in the arrestee's vehicle, thereby leaving some ambiguity in regard to the precise parameters of the newly created exception. (See 3 LaFave, Search and Seizure (4th ed. 2010–2011 supp.) § 7.1(d), pp. 124–125.) Outside the context of minor traffic offenses, which *Gant* held would not provide an evidentiary basis for a search, courts have generally adopted one of two approaches to the question. Some courts have concluded or implied that whether it is reasonable

under *Gant*'s first prong because a passenger remained in the car, and accordingly we do not address the issue. (See generally *U.S. v. Salamasina* (8th Cir. 2010) 615 F.3d 925, 929–930.)

to believe offense-related evidence might be found in a vehicle is determined solely by reference to the nature of the offense of arrest, rather than by reference to the particularized facts of the case. Others have required some level of particularized suspicion, based at least in part on the facts of the specific case.

In *People v. Nottoli, supra*, 199 Cal.App.4th 531, the defendant was arrested for driving with an expired license and for being under the influence of a controlled substance. (*Id.* at p. 540.) A deputy searched Nottoli's vehicle and discovered drug paraphernalia, a firearm, and a cellular telephone photograph that depicted Nottoli posing with firearms. (*Id.* at p. 541.) The Sixth Appellate District concluded the search was valid under *Gant*'s second prong. Although it was unreasonable to believe evidence of the expired license offense would be found in the car, the defendant's "arrest for 'being under the influence of a controlled substance' supplied a reasonable basis for believing that evidence 'relevant' to that type of offense might be in his vehicle." (*Id.* at pp. 550–551, 553.) "The presence of some amount of the controlled substance or drug paraphernalia in the interior of the vehicle would be circumstantial evidence tending to corroborate that a driver was in fact under the influence of the controlled substance." (*Id.* at p. 554, fn. omitted.) Citing Evidence Code section 210, the court opined that evidence need not directly prove an element of an offense to be considered relevant. (*Nottoli*, at p. 553.) *Nottoli* rejected the argument that some showing of particularized facts, in addition to or in place of analysis of the nature of the offense, was required. To the contrary, "*Gant* indicated that the nature of the crime of arrest was determinative . . . ." (*Ibid.*) "[N]othing in *Gant* suggests that the Supreme Court was adopting a fact-intensive test similar to the reasonable suspicion standard established by *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] . . . ." (*Nottoli*, at p. 553; see also *People v. Osborne, supra*, 175 Cal.App.4th at p. 1065 [illegal possession of a firearm, like possession of drugs, is an offense that would provide officers with a reasonable belief evidence related to the crime of gun possession, such as more ammunition or a holster, might be found in defendant's car].)

*Brown v. State* (Fla.Dist.Ct.App. 2009) 24 So.3d 671, reached a similar conclusion. Defendant Brown was stopped and arrested based on two outstanding warrants for theft. (*Id.* at p. 674.) After he was handcuffed and secured, the arresting officer observed a wallet on the front seat of Brown's car. The officer examined it, determined it belonged to an elderly woman, and conducted a search of the vehicle that revealed additional wallets that did not belong to Brown, but which were apparently unconnected to the thefts for which the warrant had been issued. Brown moved to suppress on the theory that the vehicle had no connection to the crimes for which he had been arrested. (*Ibid.*) *Brown* held the search was permissible under *Gant*'s second prong because the "offense of arrest was theft, an offense for which police

could 'expect to find evidence.' " (*Id.* at p. 677.) Citing Justice Scalia's concurrence in *Thornton*, *Brown* concluded "the 'nature of the charge' is determinative of whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence." (*Id.* at p. 678.) Thus, the court reasoned that *Gant*'s " 'reasonable belief that evidence might be found' " prong "can be satisfied solely from the inference that might be drawn from the nature of the offense of arrest itself, and the assumption that evidence might be found at the place of the arrest." (*Ibid.*) In *Brown*'s view, that question hinges upon whether the crime of arrest is one which might yield physical evidence: "when the offense of arrest of an occupant of a vehicle is, by its nature, for a crime that might yield physical evidence, then as an incident to that arrest, police may search the passenger compartment of the vehicle . . . . If the offense of arrest is for a crime for which there is no physical evidence, then the search of the vehicle is not authorized as an incident to arrest . . ." unless the arrestee has access to the passenger compartment at the time of the search. (*Id.* at pp. 681–682; see also *State v. Cantrell* (Ct.App. 2010) 149 Idaho 247, 253 [233 P.3d 178, 184] [rejecting argument that *Gant* exception requires additional facts beyond the nature of the offense; rather, " 'the offense of arrest will supply a basis . . .' " for the search]; *U.S. v. Page* (E.D.Va. 2009) 679 F.Supp.2d 648, 654.)

Certainly, the language used by the high court in *Gant*—that "*the offense of arrest will supply a basis . . .*" to believe evidence might be found in the vehicle, and that Gant's offense, driving with a suspended license, was "*an offense for which* police could not expect to find evidence"—suggests the focus of the inquiry is entirely upon the nature of the offense of arrest, rather than the particular facts of the case. (*Gant, supra*, 556 U.S. at p. 344 [129 S.Ct. at p. 1719], italics added.) This conclusion is also suggested by the court's blanket pronouncement that traffic violations do not provide a reasonable basis for the exception, but drug crimes akin to those at issue in *Belton* and *Thornton* do. (*Ibid.*) These aspects of *Gant* suggest a pure " 'nature-of-the-offense' exception, in which a reasonable belief is held to exist whenever the crime of arrest is one for which evidence is possible and might conceivably be found in the arrestee's vehicle . . . ." (*People v. Chamberlain* (Colo. 2010) 229 P.3d 1054, 1056–1057 (*Chamberlain*).)

On the other hand, as cogently explained by the Colorado Supreme Court in *Chamberlain*, *Gant*'s use of phrases like " 'reasonable to believe' " and " 'reasonable basis to believe' " indicates the court "intends some degree of articulable suspicion, a standard which it has previously acknowledged in its Fourth Amendment jurisprudence as meriting official intrusion. While this particular language is often used synonymously with probable cause, in light of the automobile exception, which already provides an exception to the warrant requirement whenever police have probable cause to believe an

automobile contains evidence of a crime, [citation], a requirement of probable cause in this context would render the entire second prong of the *Gant* search-incident-to-arrest exception superfluous. For this reason, and because the majority [in *Gant*] at several points requires only a reasonable belief that evidence 'might' be found, it seems more likely that the Court intended a lesser degree of suspicion commensurate with that sufficient for limited intrusions, like investigatory stops." (*Chamberlain, supra,* 229 P.3d at p. 1057; see also 3 LaFave, Search and Seizure, *supra,* § 7.1(d), pp. 124–125.) *Chamberlain* compared *Gant*'s language to that used in *Terry v. Ohio, supra,* 392 U.S. at page 30, which allows an investigatory stop when an officer could " '*reasonably conclude* . . . that criminal activity *may be afoot,*' " and a frisk for weapons where the officer could " '*reasonably conclude* . . . that the persons with whom he is dealing *may be armed and presently dangerous.*' " (*Chamberlain, supra,* at p. 1057, first italics added to both; see also *U.S. v. Vinton* (D.C. Cir. 2010) 389 U.S. App.D.C. 199 [594 F.3d 14, 25] [*Gant* does not require probable cause; the " 'reasonable to believe' standard probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search"].)

In our view, predicating the applicability of *Gant*'s offense-related evidence exception entirely on the nature of the offense of arrest, in the abstract, is an approach fraught with difficulty. As *Chamberlain* observed, "such a non-case-specific test would suffer from objections similar to those that *Gant* condemned in the broad reading of *Belton*." (*Chamberlain, supra,* 229 P.3d at p. 1057; see also *U.S. v. Reagan* (E.D.Tenn. 2010) 713 F.Supp.2d 724, 732.) The People's arguments here aptly demonstrate the perils of such an approach. The People posit that the presence of drugs in Evans's car would have been relevant at trial to explain his motive in committing the crime, i.e., to explain why he refused to exit the vehicle when ordered to do so by police. They urge that "motive evidence is almost always relevant in a criminal trial." (See *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1168 [91 Cal.Rptr.3d 874] [because " ' "a motive is ordinarily the incentive for criminal behavior . . . wide latitude is permitted in admitting evidence of its existence" ' "].) Certainly, motive is often relevant at trial, along with issues such as intent, knowledge, and the like. Under the People's theory, then, an officer could presumably search incident to *Gant*'s second prong if he or she reasonably believed circumstantial evidence of the myriad evidentiary issues that might eventually arise at trial might be found in the arrestee's car.

This is clearly not what *Gant* envisioned; such an interpretation would rather easily allow searches on the same scale as the now prohibited *Belton* searches. As *Chamberlain* explains: "the driving-under-restraint type of offense for which Gant was arrested necessarily requires proof of awareness, or at least constructive notice, of the particular restraint being violated, making documentary evidence in the form of official notice a possible object of a

search. [Citation.] Nevertheless, both the majority and concurring opinions had little difficulty in declaring the crime of arrest in *Gant* to be an offense for which the police could not expect to find evidence in the passenger compartment of his car." (*Chamberlain, supra,* 229 P.3d at p. 1057.) It is not difficult to imagine scenarios in which documentary evidence of motive, knowledge, or intent could reasonably be expected to be found in a car even when the driver is arrested for a minor traffic offense. There might be evidence of a speeding motorist's "motive" in the car: perhaps an appointment card showing he or she was late to a doctor's visit, or tickets suggesting he or she was in a hurry to attend the final game of the World Series. Or, a vehicle might contain evidence of distractions that caused a motorist to run a red light. Yet these are precisely the sort of traffic offenses which *Gant* held would not give rise to a reasonable basis to search. (*Gant, supra,* 556 U.S. at p. 344 [129 S.Ct. at p. 1719]; *U.S. v. Reagan, supra,* 713 F.Supp.2d at p. 732 ["nature of the offense" test could allow police to search a vehicle when it is "wholly unreasonable to believe that evidence of the offense of arrest is inside, but the nature of the offense *per se* makes a search permissible"].)

Even setting aside concerns about the potentially overbroad application of a pure "nature of the offense" test, many offenses cannot readily be categorized as either supplying the basis for a search, or not, without reference to the particular facts of the case. (See *U.S. v. Reagan, supra,* 713 F.Supp.2d at p. 732.) *Gant* teaches that "traffic violation[s]" do not provide a reasonable basis to search, whereas offenses in which there is evidence of drug possession do. (*Gant, supra,* 556 U.S. at p. 344 [129 S.Ct. at p. 1719].) We have no difficulty agreeing with *Nottoli* and similar cases to the extent they hold that, at least absent unusual circumstances, when a driver is arrested for driving under the influence, or being under the influence, it will generally be reasonable for an officer to believe evidence related to that crime might be found in the vehicle. (*People v. Nottoli, supra,* 199 Cal.App.4th at pp. 553–554; *State v. Cantrell, supra,* 233 P.3d at pp. 184, 186; *U.S. v. Oliva* (S.D.Tex., July 1, 2009, No. C-09-341) 2009 U.S.Dist. Lexis 57293; *Cain v. State* (2010) 2010 Ark.App. 30; see generally *U.S. v. Tinsley* (8th Cir. 2010) 365 Fed.Appx. 709, 710–711; *U.S. v. Martinez* (9th Cir. 2010) 403 Fed.Appx. 182, 183–184.) It is certainly logical and reasonable to expect that items related to alcohol or drug consumption, such as alcoholic beverage bottles or drug paraphernalia, might readily be contained in the intoxicated driver's car.[9] And some offenses may be so unlikely to leave evidentiary traces in a vehicle that they may be readily excluded. (See, e.g., *Holsey v. State* (2010) 306 Ga.App. 75 [701 S.E.2d 538, 541] [search not authorized under *Gant*'s

---

[9] On this point, we part company with *U.S. v. Reagan, supra,* 713 F.Supp.2d at pages 733–734 (holding that it was unreasonable to believe evidence of intoxicated driver's offense of arrest, driving under the influence, would be found inside the vehicle absent particularized facts such as observations of the driver drinking, open containers, or other similar facts).

offense-related evidence prong where offense of arrest was loitering]; *State v. Afana* (2010) 169 Wn.2d 169, 178 [233 P.3d 879, 883] [trespass].)

But other offenses may defy easy categorization. Take, for example, a driver arrested for making criminal threats in violation of Penal Code section 422. If the threat in question was verbal, it is surely unreasonable to expect evidence related to the crime to be contained in a vehicle. But if the threat was made in a text message, or amplified by means of props or a threatening drawing, evidence might well be found in the car. Or, consider the offenses of battery (Pen. Code, § 242) or assault with a deadly weapon other than a firearm or by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)). If such crimes were committed with fists alone, it would generally be unreasonable to expect evidence of the offense in the arrestee's vehicle; if committed with a brick or broken bottle, on the other hand, the opposite might be true. Even in the case of a fistfight, might it be reasonable to expect to find blood, or perhaps a broken fingernail, in the vehicle? In short, some offenses of arrest cannot be meaningfully evaluated without reference to the specific facts known to the officer. (See *U.S. v. Reagan, supra*, 713 F.Supp.2d at p. 732 ["any attempt to categorize every criminal offense as being either one that might yield physical evidence or one for which there is no physical evidence runs into interpretive problems"].)

■ Accordingly, we agree with *Chamberlain* that while the "nature of the offense of arrest is clearly intended to have significance, and in some cases it may virtually preclude the existence of real or documentary evidence, . . . a broad rule automatically authorizing searches incident to arrest for all other offenses cannot be reconciled with the actual holding of *Gant*. . . . Some reasonable expectation beyond a mere possibility, whether arising solely from the nature of the crime or from the particular circumstances surrounding the arrest, is therefore clearly contemplated by the Court." (*Chamberlain, supra*, 229 P.3d at p. 1057.) We conclude a reasonable belief to search for evidence of the offense of arrest exists when the nature of the offense, considered in conjunction with the particular facts of the case, gives rise to a degree of suspicion commensurate with that sufficient for limited intrusions such as investigatory stops. (*Ibid.*) Reasonable suspicion, not probable cause, is required. (*Chamberlain*, at p. 1057; *U.S. v. Vinton, supra*, 594 F.3d at p. 25; 3 LaFave, Search and Seizure, *supra*, § 7.1(d), pp. 124–125; but see *U.S. v. Grote* (E.D.Wn. 2009) 629 F.Supp.2d 1201, 1203.) As a practical matter, for crimes such as driving under the influence, absent unusual circumstances the requisite reasonable belief may be readily inferable from the nature of

the offense, with little or nothing more. In most cases, however, the facts known to the officer, considered with the nature of the offense, will be determinative.[10]

■ Here, neither the nature of the offense nor any facts specific to the crime would have provided the officers with a reasonable belief that evidence related to the offense of arrest would be found in Evans's automobile. Evans's offense of arrest was interfering with a police investigation in violation of Penal Code section 148, due to his refusal to exit the car. In pertinent part, Penal Code section 148, subdivision (a)(1) prohibits willfully resisting, delaying, or obstructing a peace officer in the discharge of his or her duties. *People v. Bridgewater* (2009) 235 Ill.2d 85 [335 Ill.Dec. 208, 918 N.E.2d 553, 558], concerned a similar crime. Applying *Gant*, the court there explained, "defendant was arrested for obstructing a peace officer after exiting his vehicle and walking into the store. The offense was based entirely on defendant's failure to obey [the officer's] commands. The officers could not have reasonably believed evidence of obstructing a peace officer could be found inside defendant's vehicle." (*Id.*, 918 N.E.2d at p. 558; see also *U.S. v. Chavez* (E.D.Cal., Nov. 24, 2009, No. 2:09-cr-0033 FCD) 2009 U.S.Dist. Lexis 116924 [resisting arrest is akin to a traffic-related offense, and an officer could not reasonably expect to find evidence of the crime inside a car].)[11] The same is true here. Impeding an officer's investigation is unlikely to leave evidentiary traces, such as the fruits or instrumentalities of the crime, in a vehicle. The only conduct underlying the offense was Evans's refusal to exit the car when Currie ordered him to do so. It is unreasonable to believe evidence of that conduct would remain in the vehicle after Evans was no longer inside. (See *Knowles v. Iowa, supra*, 525 U.S. at p. 118 ["Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."].) Accordingly, we hold that the initial search of the vehicle was not justified as a search incident to arrest under *Gant*'s offense-related evidence exception.

---

[10] Of course, other established exceptions to the warrant requirement are unaffected by *Gant*'s interpretation of the search incident to arrest exception. (*Gant, supra*, 556 U.S. at p. 346 [129 S.Ct. at p. 1721]; *United States v. Ross* (1982) 456 U.S. 798, 820–821 [72 L.Ed.2d 572, 102 S.Ct. 2157] (*Ross*) [automobile exception]; *Michigan v. Long* (1983) 463 U.S. 1032 [77 L.Ed.2d 1201, 103 S.Ct. 3469] [search of passenger compartment permissible when an officer has reasonable suspicion that an individual is dangerous and might access the vehicle to gain immediate control of a weapon].)

[11] Although unpublished California cases may not be cited, the *California Rules of Court* do not prohibit citation to unpublished federal cases. (Cal. Rules of Court, rule 8.1115; *Moss v. Kroner* (2011) 197 Cal.App.4th 860, 874 & fn. 6 [129 Cal.Rptr.3d 220]; *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352 & fn. 6 [42 Cal.Rptr.3d 283].)

b. *The searches were not justified under the automobile exception.*

■ We turn next to the question of whether either the initial search or the search at the impound yard was lawful under the automobile exception to the warrant requirement. Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found. (*Gant, supra*, 556 U.S. at pp. 346–347 [129 S.Ct. at p. 1721]; *Ross, supra*, 456 U.S. at pp. 820–821; *People v. Panah* (2005) 35 Cal.4th 395, 469 [25 Cal.Rptr.3d 672, 107 P.3d 790]; *People v. ·Superior Court (Nasmeh), supra*, 151 Cal.App.4th at pp. 100–102.) Such a search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." (*Ross, supra*, at p. 809.) *Ross* "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." (*Gant, supra*, at p. 347 [129 S.Ct. at p. 1721].) "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Ross, supra*, at p. 825; see *Gant, supra*, at p. 347 [129 S.Ct. at p. 1721]; *People v. Hunter* (2005) 133 Cal.App.4th 371, 379–382 [34 Cal.Rptr.3d 818].) The automobile exception is rooted in the reduced expectation of privacy in a vehicle, the fact a vehicle is inherently mobile, and the historical distinctions between searches of automobiles and dwellings. (See *California v. Carney* (1985) 471 U.S. 386, 391–393 [85 L.Ed.2d 406, 105 S.Ct. 2066]; *People v. Superior Court (Nasmeh), supra*, 151 Cal.App.4th at p. 100.)

Probable cause is defined as " ' "a fair probability that contraband or evidence of a crime will be found." ' " (*Alabama v. White* (1990) 496 U.S. 325, 330 [110 L.Ed.2d 301, 110 S.Ct. 2412]; see *People v. Hunter, supra*, 133 Cal.App.4th at p. 378.) Probable cause to search thus exists when the "known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . ." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 116 S.Ct. 1657]; see *People v. Hunter, supra*, at p. 378.) The standard is a " ' "fluid concept—turning on the assessment of probabilities in particular factual contexts," ' " and is incapable of precise definition. (*People v. Thompson* (2006) 38 Cal.4th 811, 818 [43 Cal.Rptr.3d 750, 135 P.3d 3]; see *People v. Hunter, supra*, at p. 378.) A probable cause determination must be based on objective facts. (*Ross, supra*, 456 U.S. at p. 808.)

■ The People did not establish probable cause existed to search Evans's vehicle at the scene of arrest pursuant to the automobile exception. The facts known to the officers were that Evans had swerved back and forth after he

made two turns, was extremely nervous, refused to exit the car when ordered to do so, and instead kept asking to speak to a police supervisor. Additionally, the stop occurred at night, in an area claimed as the territory of a criminal street gang. Based on the totality of the circumstances, a reasonably prudent person would not have believed contraband or evidence of a crime would be found in the car. Nervous, evasive behavior is undoubtedly a potentially significant factor to be considered in determining whether probable cause (or reasonable suspicion) exists. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 120 S.Ct. 673]; *In re H.M.* (2008) 167 Cal.App.4th 136, 144 [83 Cal.Rptr.3d 850]; *People v. Osborne, supra,* 175 Cal.App.4th at p. 1058, fn. 5.) Nervousness by itself, however, does not establish probable cause. (*People v. Valenzuela* (1994) 28 Cal.App.4th 817, 831 [33 Cal.Rptr.2d 802]; *People v. Raybourn* (1990) 218 Cal.App.3d 308, 312 [266 Cal.Rptr. 884] ["Mere nervous, furtive, or evasive conduct in the presence of police will not justify a detention."].) Evans's failure to cooperate was likewise insufficient to warrant a reasonable person in the belief there was contraband in the car. (Cf. *Illinois v. Wardlow, supra,* at p. 125 [" 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure' "]; *In re Joseph F.* (2000) 85 Cal.App.4th 975, 994–995 [102 Cal.Rptr.2d 641].) Contrary to situations in which a suspect engages in "[h]eadlong flight" (*Illinois v. Wardlow, supra,* at p. 124), Evans did not attempt to flee. Instead, he kept asking to speak to a police supervisor. We do not condone Evans's refusal to comply with Officer Currie's demand that he exit the vehicle, conduct that provided the justification for his arrest for violating Penal Code section 148. (See *People v. Lloyd* (1989) 216 Cal.App.3d 1425, 1429 [265 Cal.Rptr. 422].) But under the facts presented here, his refusal to cooperate does not establish probable cause to search the vehicle.

Regarding the nature of the area where the stop occurred, Officer Currie explained he ordered Evans to exit the car because it was nighttime in an area claimed as the territory of a gang. Currie did *not* state that he believed Evans was a gang member or engaged in gang-related activity, nor were any facts presented that would have supported such a conclusion. That a detention occurs in a high crime area may contribute to a finding of probable cause if it is relevant to the officer's belief that the suspect is involved in criminal activity (*People v. Nonnette* (1990) 221 Cal.App.3d 659, 668 [271 Cal.Rptr. 329]; *People v. Souza* (1994) 9 Cal.4th 224, 240 [36 Cal.Rptr.2d 569, 885 P.2d 982]; cf. *Illinois v. Wardlow, supra,* 528 U.S. at p. 124; *In re H.M., supra,* 167 Cal.App.4th at p. 145), but that principle does not help the People here, given that there was no apparent connection between the hour and area, on the one hand, and the officers' suspicions, on the other.

As to Evans's erratic driving, the officers followed Evans for a brief period, over a course of several blocks at the most, during which time Evans

twice veered back and forth after making turns. These facts logically suggested possible intoxication. But once Officer Currie contacted Evans in his vehicle, nothing suggested Evans was under the influence. Currie did not state that he observed any indicia of intoxication such as the odor of alcohol or marijuana, nystagmus, slurred speech, or the like. Indeed, Currie did not testify that he suspected Evans was intoxicated, or that the search was conducted for that reason. Evans was not arrested for driving under the influence. *People v. Low* (1983) 148 Cal.App.3d 89 [196 Cal.Rptr. 18], cited by the People, does not assist them. In *Low*, probable cause to search was not based solely upon the fact the driver had swerved back and forth over the road's lane lines. The driver also had staggered when he exited the car; his speech was slurred; his pupils were " 'extremely pinpointed' " and nonresponsive to light; and puncture wounds on his arm indicated heroin use. (*Id.* at p. 91.) No similar facts were present here. Thus, contrary to the People's argument, there was no probable cause to believe Evans was under the influence, nor did the totality of the circumstances establish probable cause.

For the same reasons, there was no probable cause to conduct the search at the impound yard. Setting aside the evidence of the baggies and cash, which was disclosed during the initial, unlawful search, the only additional fact known to the officers when they conducted the impound yard search was that Evans had once hidden a gun in his air vent when arrested for a crime sometime previously. Had there been probable cause to believe contraband was in the vehicle, this information would no doubt have given the officers insight into where it might be hidden. We fail to see, however, how the fact a gun was found sometime well before the stop at issue, in regard to an unrelated crime for which Evans was apparently never charged, somehow established probable cause to believe he had contraband in the car on this occasion. Because probable cause did not exist to conduct either the first or second searches, the searches violated the Fourth Amendment.

c. *The inevitable discovery doctrine.*

The People argue that even if the searches were unlawful, suppression of the evidence was unwarranted because the baggies, cash, and cocaine inevitably would have been discovered during an inventory search. Under the inevitable discovery doctrine, where the prosecution can establish by a preponderance of the evidence that the information would inevitably have been discovered by lawful means, the exclusionary rule does not apply. (*Nix v. Williams* (1984) 467 U.S. 431, 443–444 [81 L.Ed.2d 377, 104 S.Ct. 2501]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 62 [17 Cal.Rptr.3d 710, 96 P.3d 30]; *People v. Robles* (2000) 23 Cal.4th 789, 800–801 [97 Cal.Rptr.2d 914, 3 P.3d 311].) "As the United States Supreme Court has explained, the doctrine 'is in reality an extrapolation from the independent source doctrine:

*Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.' [Citation.]" (*People v. Robles, supra*, at p. 800.) The doctrine is intended to ensure that the prosecution is not placed in a worse position than it would have been had no illegality occurred. (*People v. Coffman and Marlow, supra*, at p. 62.)

■ The People have failed to establish that the baggies and cash would inevitably have been discovered. The inevitable discovery doctrine was not presented to the trial court below, and the factual basis for the theory was not explored. (Cf. *People v. Robles, supra*, 23 Cal.4th at p. 801.) The impound yard manager testified that his driver would have completed a routine inventory search; however, the yard's policy was to inventory only items that were in plain view. He explained, "We don't search. Just what we can see." Because the cash and the baggies were in the vehicle's center console, and the cocaine was in the air vent, the inventory search conducted at the impound yard would have disclosed none of these items. The record was undeveloped regarding what, if any, additional inventory would have been conducted by police. The impound yard manager identified a "CHP 180" form and testified that "[t]he officer fills it out." Other than this oblique reference, there was no evidence presented regarding when, or whether, a separate inventory would have been conducted by police, or what the scope of such an inventory search would have been. The prosecution has the burden to prove the existence of an inventory search policy, including any policy or practice governing the opening of closed containers. (*People v. Williams, supra*, 20 Cal.4th at p. 138.) Given the People's failure to factually develop these predicates to the application of the inevitable discovery doctrine below, they cannot rely upon the doctrine now.[12]

Because both searches were constitutionally impermissible, Evans's suppression motion should have been granted.

---

[12] The People's cursory invocation of the exigent circumstances doctrine is even less persuasive. The People cite no authority discussing application of the exigent circumstances doctrine in the context of a vehicle search. It is true that the presumption of unreasonableness that attaches to a warrantless entry into a home can be overcome by a showing that destruction of evidence is imminent. (*People v. Thompson, supra*, 38 Cal.4th at p. 818.) Entry into a home based on exigent circumstances requires probable cause to believe that the entry is justified by the imminent destruction of evidence or other factors. (*Ibid.*; *People v. Celis* (2004) 33 Cal.4th 667, 676 [16 Cal.Rptr.3d 85, 93 P.3d 1027].) The People fail to adequately address how the doctrine applies in the context of a vehicle search, where the car was in the impound yard, the driver was apparently in the hospital, and the officers had no probable cause to search. Because the People fail to adequately support this argument, we do not consider it. (See *People v. Redd, supra*, 48 Cal.4th at pp. 744–745; *People v. Barnett* (1998) 17 Cal.4th 1044, 1182 [74 Cal.Rptr.2d 121, 954 P.2d 384] [where defendant failed to support his claim with adequate argument, court rejected it as not properly raised]; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1396–1397 [75 Cal.Rptr.3d 200].)

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to set aside its order denying the motion to suppress, enter a different order granting the motion, allow appellant to move to withdraw his guilty plea, and conduct further proceedings consistent with the opinions expressed herein.

Croskey, Acting P. J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 22, 2012, S198696.