Filed 11/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B268751 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F-03787) (San Luis Obispo County) |
| v. | |
| DANIEL GRANT QUICK, | |
| Defendant and Appellant. | |

The interaction between a peace officer and a person suspected of committing a crime is not a game. It is serious business. Knowing that his "goose was cooked" if the officer conducted a search, appellant attempted what was tantamount to a "do it yourself" suppression motion. During the course of his detention, he took off his coat and threw it into his car. Then he threw the car keys into his car. Then he locked the car thinking that the police would not be able to lawfully gain entry and search. This was a game of "hide and seek" which he was bound to lose. It was a sophomoric attempt to thwart the lawful seizure of evidence and a crime itself, i.e., a willful obstructing of a peace officer. (Pen. Code, § 148, subd. (a)(1).) A person detained for investigation has no constitutional right to dispose of evidence.

(*People v. Bracamonte* (1975) 15 Cal.3d 394, 405, fn. 6; *People v. Maddox* (1956) 46 Cal.2d 301, 306.)

Daniel Grant Quick appeals his conviction by plea to possession for sale of a controlled substance (Health & Saf. Code, § 11378), entered after the trial court denied his motion to suppress evidence made pursuant to Penal Code section 1538.5. Pursuant to a negotiated plea, appellant admitted suffering a prior strike conviction and was sentenced to four years state prison. He contends that the trial court erred in ruling that the vehicle inventory search was reasonable and incident to a lawful arrest for driving under the influence. He argues that the police detained and arrested him as a ruse to conduct a narcotics investigation. We affirm.

*Facts and Procedural History*

Atascadero Police Officer Matthew Chesson received a call from a narcotics detective that appellant had just left his residence in a black Mercury. Earlier that day, Officer Chesson was advised that appellant was involved in narcotics activity and had multiple firearms.

Officer Chesson followed appellant, saw him commit three Vehicle Code violations and stopped him. He explained to appellant that his brake lights were not working properly. Appellant said that he had recently rewired the car and may have incorrectly connected the wires. Officer Chesson noticed that appellant's pupils were constricted, he was exhibiting facial tremors, and open sores on his face. These were symptoms of a person under the influence of a controlled substance. Appellant admitted using Percocet and marijuana earlier in the day.

Appellant was asked to step out of the car for a field sobriety test. He refused. Officer Chesson knew that appellant

was a convicted felon with access to firearms. For officer safety purposes, he called for back-up. Appellant eventually got out of the car, removed his jacket and tossed it on the driver's seat. Appellant then rolled up the car window, tossed his keys inside the car, and locked and shut the car door.

Officer Chesson conducted field sobriety tests, determined that appellant was under the influence of a controlled substance, and arrested appellant for driving under the influence.

Sergeant Jason Carr assisted in the arrest and ordered that appellant's vehicle be towed because it was blocking a driveway. The driveway owner, a friend of appellant, said that the vehicle could stay parked where it was. However, it was parked 24 inches into the roadway creating a traffic hazard.

Officers conducted a vehicle inventory search, finding 25.9 grams of methaphetamine (259 to 518 single doses) in the jacket pocket, two methamphetamine pipes, and a Taser.

Denying the motion, the trial court found that Officer Chesson had a rational suspicion to effectuate the traffic stop and probable cause to arrest appellant for driving under the influence of a controlled substance. It also said that appellant "took steps . . . which made it difficult or impossible for the police to do a simple search incident to the arrest when he locked the car and threw the keys in it." Officer Chesson "had legal authority to search the interior of the car since he was arresting [appellant] for [being] under the influence of a controlled substance or driving under the influence." Finally, it found that the inventory

3

search was conducted pursuant to standard vehicle impound procedures and not for investigatory purposes.[1]

*Standard of Review*

In reviewing a ruling on a motion to suppress evidence, we defer to the trial court's factual findings, express or implied, if supported by substantial evidence. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.) "We exercise our independent judgment in determining whether, on the facts presented, the search . . . was reasonable under the Fourth Amendment." (*Ibid.*) "If there is conflicting testimony, we must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them. [Citations.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

*Inventory Search*

Appellant contends that the search was an unlawful ruse to facilitate a narcotics investigation. This contention is refuted by the record and the trial court's factual findings. Vehicle inventory searches are a well-defined exception to the Fourth Amendment warrant requirement. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.) Under the community caretaking doctrine, police may, without a warrant, impound and search a vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose. (*People v. Williams* (2006) 145 Cal.App.4th 756, 761-762.) "The authority of

---

[1] We commend the trial court for a well articulated ruling. Such a ruling not only tells parties why the court has ruled, but also aids the appellate court in its duties. (See also *People v. Williams* (2007) 156 Cal.App.4th 949, 952.)

4

police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 369.) A vehicle impound search will be upheld if it is reasonable under all the circumstances. (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1247.)

Sergeant Carr impounded the vehicle because it was blocking a driveway and parked two feet out in the roadway. He said that it was a narrow road and that "two cars [would] have a difficult time passing" one another "[e]ven if that vehicle wasn't there." Officer Chesson did not believe appellant's vehicle was in immediate danger of being hit, but agreed it could have led to a collision if another car tried to drive by or an inattentive driver did not see the vehicle sticking out.

Appellant argues that the vehicle was "hovering" between the dirt and road pavement and not a traffic hazard. Sergeant Carr's testimony was clear: the vehicle was blocking a driveway and parked far enough out in the roadway to create a traffic hazard. The sergeant's testimony was corroborated by Officer Chesson and photos of the parked vehicle.

The vehicle was impounded pursuant to Vehicle Code section 22651, subdivisions (b) and (h) and subject to an inventory search pursuant to established police policy. Vehicle Code section 22651, subdivision (b), provides that a peace officer may remove a vehicle: "When a vehicle is parked or left standing upon a highway in a position so as to obstruct the normal movement of traffic or in a condition so as to create a hazard to other traffic upon the highway"; and (h)(1) "When an officer arrests a person driving or in control of a vehicle for an alleged

5

offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody."

Sergeant Carr explained that the inventory search was required to document what was in the vehicle and to protect the tow company and the police department. Although Sergeant Carr was aware of the narcotics investigation, he testified that the sole purpose of the impound search was to inventory what was in the vehicle and to verify that nothing was missing when the vehicle was returned to appellant. Vehicle Code section 22651 authorized the vehicle impound. (See *People v. Aguilar* (1991) 228 Cal.App.3d 1049, 1053 [court focuses on the purpose of the impound rather than the purpose of the inventory].) When a vehicle is lawfully impounded, an inventory search pursuant to an established, standardized procedure does not violate the Fourth Amendment. (*South Dakota v. Opperman*, *supra*, 428 U.S. at pp. 371-375; *People v. Nottoli* (2011) 199 Cal.App.4th 531, 545-546; *People v. Evans* (2011) 200 Cal.App.4th 735, 743, fn. 5.) The trial court reasonably concluded that it was a lawful inventory search aimed at securing the car and its contents. (*South Dakota v. Opperman*, *supra*, 428 U.S. at p. 373; *People v. Suff* (2014) 58 Cal.4th 1013, 1056.)

*Search Incident to Arrest*

In the alternative, the trial court found that the search was incident to a lawful arrest and did not violate the Fourth Amendment. Citing *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*), appellant argues that the search was unreasonable because the officers had no reason to believe that evidence relevant to the arrest for driving under the influence of a controlled substance would be found in the vehicle. In *Gant* the defendant was arrested for driving with a suspended license,

6

handcuffed, and locked in a patrol car before officers searched his car and found cocaine.  The Supreme Court determined that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement did not justify the search because the police could not reasonably have believed that evidence of the offense for which defendant was arrested (i.e., driving with a suspended license) might be found in the car.  (*Id.*, at p. 344.)  "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.  When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Id.*, at p. 351.)

In *People v. Nottoli, supra,* 199 Cal.App.4th 531, defendant was arrested for driving with an expired license and for being under the influence of a controlled substance.  (*Id.*, at p. 540.)  A deputy searched Nottoli's vehicle and found drug paraphernalia, a firearm, and a cell phone photo of Nottoli posing with firearms.  (*Id.*, at p. 541.)  The Court of Appeal held that the search was valid pursuant to *Gant*.  Although it was unreasonable to believe evidence of the expired license offense would be found in the car, defendant's "arrest for 'being under the influence of a controlled substance' supplied a reasonable basis for believing that evidence 'relevant' to that type of offense might be in his vehicle. [Citations.]"  (*Id.*, at p. 553.)  "The presence of some amount of the controlled substance or drug paraphernalia in the interior of the vehicle would be circumstantial evidence tending to corroborate that a driver was in fact under the

7

influence of the controlled substance." (*Id.*, at p. 554, fn. omitted.)  The court rejected the argument that some showing of particularized facts, in addition to or in place of analysis of the nature of the offense, was required.  (*Id.*, at p. 556.)  "*Gant* indicated that the nature of the crime of arrest was determinative . . . ."  (*Id.*, at p. 553.)  "[N]othing in *Gant* suggests that the Supreme Court was adopting a fact-intensive test similar to the reasonable suspicion standard established by *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] . . . ."  (*Ibid.*)

Appellant admitted using Percocet and marijuana earlier in the day and was under the influence of a controlled substance when driving.  When he stepped out of the vehicle to perform the field sobriety tests, he threw his jacket and keys into the car, rolled up the window, and locked and shut the door.  Officer Chesson thought it was "odd" behavior but consistent with what someone driving under the influence would do if trying to hide drugs.  In accordance with *Gant*, "the focus of the inquiry is entirely upon the nature of the offense of arrest, rather than the particular facts of the case.  [Citation.]" (*People v. Evans*, *supra*, 200 Cal.App.4th at p. 748.)  "[W]hen a driver is arrested for driving under the influence, or being under the influence, it will generally be reasonable for an officer to believe evidence related to that crime might be found in the vehicle.  [Citations.]  It is certainly logical and reasonable to expect that items related to alcohol or drug consumption, such as alcoholic beverage bottles or drug paraphernalia, might readily be contained in the intoxicated driver's car." (*Id.*, at p. 750.)  The trial court did not err in finding that the search was reasonable and incident to the arrest for driving under the influence of a controlled substance.  (*Ibid.*;

8

*People v. Nottoli*, *supra*, 199 Cal.App.4th at p. 553.)  A person arrested for driving under the influence may not defeat a "search incident to arrest" by locking incriminating evidence inside his vehicle.  As indicated, it is a crime to do so.

The judgment (order denying motion to suppress evidence) is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, J., Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Christina Alvarez Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, David W. Williams, Deputy Attorney General, for Plaintiff and Respondent.