Filed 4/26/21; certified for publication 5/18/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090220 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE000327) |
| v. | |
| JEMONDRE DIONTE MOORE, | |
| Defendant and Appellant. | |

Pursuant to a negotiated plea agreement, defendant Jemondre Dionte Moore entered a plea of no contest to one count of possession of a firearm by a convicted felon (Pen. Code, § 29800)[1] and admitted he was previously convicted of a strike offense within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and served a prior prison term (§ 667.5, subd. (b)). The remaining count, charging defendant with possession of marijuana for sale, and additional enhancement allegations were dismissed. Defendant was sentenced to serve five years in state prison.

Prior to entering into the plea, the trial court denied defendant's motion to suppress evidence found during a search of defendant's backpack, which he left on the

---

[1] Undesignated statutory references are to the Penal Code.

1

front passenger's side floorboard of a friend's Jeep. The backpack was searched during a search of the Jeep pursuant to the automobile exception to the warrant requirement. The trial court concluded this exception authorized the search because the officer who conducted the search had probable cause to believe the Jeep contained an unlawful amount of marijuana. Defendant challenges this conclusion in this appeal. The Attorney General, in addition to arguing the search was lawful under the automobile exception, argues defendant abandoned the backpack and therefore divested himself of any privacy interest therein. We conclude the search was reasonable under the automobile exception to the warrant requirement and affirm the judgment on that basis.[2]

## FACTS

Sergeant Andy Hall of the Sacramento Police Department observed a Jeep SUV parked on a curb near 24th Street Bypass Park in the Meadowview neighborhood in Sacramento. Sergeant Hall observed defendant leaning into the open front passenger door of the Jeep. When Hall parked his patrol unit behind the Jeep, defendant walked away to the middle of the park.

Sergeant Hall approached the individual sitting in the driver's seat, Brian Bennett, and engaged him in conversation. When Hall reached the Jeep, Bennett opened the driver's side door and a "strong" smell of "fresh marijuana" escaped from the vehicle. Bennett appeared nervous. Hall asked Bennett if there was any marijuana in the car. Bennett said there was not. He then showed the sergeant an "empty glass mason jar that looked like it had marijuana residue in it" and claimed there had been marijuana in the car, which he had recently smoked. When asked if there was anything illegal in the Jeep,

---

[2]      This conclusion makes it unnecessary to address the Attorney General's alternative argument concerning abandonment. We express no opinion on the matter. We also directed the parties to address in supplemental letter briefs the related issue of whether or not defendant has standing to challenge the search of his friend's Jeep. In their submissions, the parties agree the standing issue is forfeited for failure of the People to raise the issue below. Without deciding the matter, we accept the Attorney General's concession regarding forfeiture.

Bennett responded, "[n]ot that I know of." Hall also asked Bennett about a backpack that was on the front passenger floorboard. Bennett responded that his friend had left it in the Jeep. During Hall's interaction with Bennett, the sergeant observed defendant watching from a gazebo in the park.

Based on his observations and the odor of fresh marijuana, Hall decided to search the Jeep for an unlawful amount of marijuana and detained Bennett in his patrol car as he did so. When Hall picked up the backpack from the front passenger floorboard, defendant approached and claimed the backpack as his property. The sergeant informed defendant that he was going to conduct a probable cause search of the backpack. Defendant responded that a probable cause search "didn't have anything to do with his property, and he did not want [Hall] to search the backpack." Hall asked defendant for his name. Defendant answered, "are you serious?" Defendant then turned and walked away towards a parked Mercedes with another individual in the driver's seat. Defendant got into the parked Mercedes, which drove away. Hall radioed for another unit to intercept the Mercedes.

Sergeant Hall opened the backpack and found a jar containing approximately one-quarter pound of marijuana. He also found a loaded .40-caliber handgun, digital scales, "narcotic[] packaging" materials, a cell phone, and a wired charger for an ankle monitor. Defendant was apprehended from within the Mercedes by another police unit.

DISCUSSION

I

### The Trial Court Properly Denied Defendant's Suppression Motion

Defendant contends the totality of the circumstances failed to supply Sergeant Hall with "probable cause to believe there was an illegal amount of marijuana in the vehicle, as opposed to the presence of a legal amount." We disagree.

### A.

### Relevant Law

In reviewing a trial court's decision to grant a motion to suppress evidence, we rely on the trial court's express and implied factual findings, provided they are supported

3

by substantial evidence, to independently determine whether the search was constitutional. (See *People v. Brown* (2015) 61 Cal.4th 968, 975.) "Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court." (*People v. Tully* (2012) 54 Cal.4th 952, 979.) It is the trial court's role to evaluate witness credibility, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences. (*Ibid*.) We review those factual findings under the deferential substantial evidence standard, considering the evidence in the light most favorable to the trial court's order. (*Ibid*.)

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) Warrantless searches are "*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585], fns. omitted; *People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183, 1196.) One such exception to the warrant requirement is the automobile exception, which allows for warrantless searches of automobiles where an officer has probable cause to believe the vehicle contains contraband or evidence of a crime. (*Carroll v. United States* (1925) 267 U.S. 132, 155-156 [69 L.Ed. 543, 552]; see also *People v. Evans* (2011) 200 Cal.App.4th 735, 753.) Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 918].) An officer who has probable cause to search pursuant to the automobile exception may then conduct a probing search of all "compartments and containers within the vehicle whose contents are not in plain view." (*United States v. Ross* (1982) 456 U.S. 798, 800 [72 L.Ed.2d 572, 578].)

A warrantless automobile search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." (*United States v. Ross*, *supra*, 456 U.S. at p. 809, fn. omitted.) Thus, "if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably

arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." (*Carroll v. United States*, *supra*, 267 U.S. at p. 149.)

As the United Stated Supreme Court has noted, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois v. Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 544].) Further, "[a]n officer is entitled to rely on his [or her] training and experience in drawing inferences from the facts he [or she] observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.' " (*United States v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105, quoting *United States v. Michael R.* (9th Cir. 1996) 90 F.3d 340.) When considering the validity of the evidence, it is to be analyzed " 'as understood by those versed in the field of law enforcement.' " (*Illinois*, at p. 232, quoting *United States v. Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621, 629].) "The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount . . . to probable cause." (*Ornelas v. United States*, *supra*, 517 U.S. at p. 696.) As such, we consider the totality of the circumstances, and analyze these facts as would a reasonable police officer, in assessing the officer's probable cause, rather than looking to singular facts in a vacuum. (See *Illinois*, at pp. 230-231, 238.)

**B.**

***Sergeant Hall Had Probable Cause to Search the Jeep***

Sergeant Hall's testimony established: (1) the park was a high-crime area; (2) defendant was leaning into the open passenger's side door of a parked Jeep (based on Hall's training and experience he believed this could be a hand-to-hand drug transaction); (3) upon seeing Hall, defendant walked away from the Jeep; (4) when Hall approached the vehicle, Bennett opened the driver's side door and there was a strong smell of fresh marijuana; (5) Bennett appeared to be nervous; (6) when asked about the smell of fresh

5

marijuana, Bennett claimed the smell came from him because he had recently smoked; (7) Bennett also indicated that the odor might be from an empty mason jar with what appeared to be marijuana residue inside; and (8) when asked if there were illegal items in the Jeep, Bennett responded "[n]ot that I know of," arousing further suspicion.

Sergeant Hall testified about his training and experience, including his 12 years of experience as a peace officer, and his current position as a sergeant supervising the South Sacramento gang enforcement team. He participated in approximately one year of academy training which included instruction from numerous drug experts. Hall also testified to his extensive experience in the field including a role as supervisor of the South Sacramento marijuana abatement team in which he investigated illegal indoor marijuana growing operations. He also testified to encountering marijuana for sales or simple possession hundreds of times throughout his career. Based on this training and experience, Hall believed that Bennett's claim, that the strong smell of fresh marijuana was actually the smell of recently burnt marijuana or was emanating from an empty mason jar with marijuana residue, was not believable. As previously stated, Hall was "entitled to rely on his training and experience in drawing inferences from the facts he observe[d]" throughout his encounter with Bennett. (*United States v. Lopez-Soto*, *supra*, 205 F.3d at p. 1105.)

We conclude the following facts, together with Sergeant Hall's training and experience, established probable cause. We first note Hall's observations when he arrived at the Jeep, parked in a high-crime area with defendant leaning into the passenger side of the Jeep, suggested to the officer that there was a potential drug transaction occurring in the Jeep. Defendant leaving the Jeep when the officer approached only added to Hall's level of suspicion. While we agree with defendant's assessment that these facts alone would not have supplied the officer with probable cause to search the Jeep for contraband, they are relevant circumstances that must be considered along with what came next, specifically the strong odor of fresh marijuana emanating from the Jeep when Hall reached the driver's side and began his encounter with Bennett, coupled with Bennett's implausible explanation for that smell. Stated simply, a reasonable officer with

6

Hall's training and experience could believe Bennett lied when he claimed that residual smoke and an empty mason jar containing marijuana residue was the source of the strong odor of fresh marijuana. Bennett was also acting nervously. And when asked whether there was anything illegal in the Jeep, he responded equivocally "[n]ot that I know of." Based on Hall's substantial experience interacting with suspects in the field, this kind of answer to a specific question was also suspicious. Given Bennett's behavior and responses, together with the strong odor of fresh marijuana, a reasonable officer in Hall's position could believe the Jeep contained an amount of marijuana prohibited by law.

Defendant attempts to rebut this conclusion by first presenting each factor in the probable cause analysis on an individual basis, arguing none of those factors is enough, individually, to establish probable cause. Then defendant summarily concludes that the same factors taken together do not establish probable cause. For the reasons that follow, we do not accept defendant's piecemeal approach to the probable cause analysis.

Defendant begins by arguing because it is now legal to possess up to 28.5 grams, or about one ounce, of marijuana, Sergeant Hall lacked probable cause to search the Jeep based on Bennett's admission of having recently smoked, and Bennett's presentation of an empty mason jar that appeared to contain marijuana residue. (Health & Saf. Code, § 11362.1, subd. (c).) In making this argument, defendant does not acknowledge the highly regulated status marijuana maintains in California law. Section 11362.1, subdivision (c) provides "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." Given other statutory regulations placed on marijuana possession, however, "section 11362.1, subdivision (c) does not apply when the totality of the circumstances gives rise to a fair probability that an existing marijuana regulation was violated when the search occurred." (*People v. Johnson* (2020) 50 Cal.App.5th 620, 626, citing *People v. Fews* (2018) 27 Cal.App.5th 553, 563.) Existing marijuana regulations include limits on the amount an individual may lawfully possess. (See, e.g., Health & Saf. Code, § 11362.1, subd. (a) [permitting possession of up to 28.5 grams of cannabis].)

7

Defendant relies on *Lee* to support his argument that Bennett's admission of recently smoking marijuana and the empty jar containing what appeared to be marijuana residue he showed Sergeant Hall could not generate probable cause to search Bennett's Jeep. (*People v. Lee* (2019) 40 Cal.App.5th 853 (*Lee*).) In *Lee*, officers discovered a small amount of marijuana on the defendant during a patsearch following a traffic stop. (*Id.* at p. 857.) The appellate court affirmed the trial court's grant of the suppression motion, reasoning the legalization of marijuana meant courts "attach fairly minimal significance" to its presence. (*Id.* at p. 861.) However, the *Lee* court also noted while "possession of a small (legal) amount of marijuana does not foreclose the possibility that [a] defendant possesses a larger (illegal) amount," there must be "*additional* evidence beyond the mere possession of a legal amount" to generate probable cause to believe the defendant has more marijuana. (*Id.* at p. 862.) The *Lee* court determined such additional evidence was lacking there, and thus no probable cause existed. (*Id.* at p. 866.)

Defendant's characterization of the *Lee* rule is correct. However, defendant fails to answer for *Lee*'s critical caveat: while a lawful amount of marijuana is not, *on its own*, enough to establish probable cause, such a lawful amount may establish probable cause where coupled with other factors contributing to an officer's reasonable belief the defendant may be in violation of other statutory regulations of marijuana possession. (*Lee*, *supra*, 40 Cal.App.5th at p. 862.) As the People note, Sergeant Hall articulated a reasonable basis for his belief defendant possessed an unlawful amount of marijuana. (See *Carroll v. United States*, *supra*, 267 U.S. at p. 149.) Hall testified to the "strong" odor of fresh marijuana he noticed emanating from the Jeep that, in his training and experience, he reasonably believed could not be accounted for by the empty mason jar Bennett produced or from Bennett's explanation that the smell was caused by the residual traces of recently burnt marijuana. Hall specifically testified to his ability to distinguish between the smell of burnt and raw marijuana and there is a recognized " 'commonsense distinction between the smells of burnt and raw marijuana.' " (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1252 (conc. opn. of Liu, J.), quoting *United States v. Downs* (10th Cir. 1998) 151 F.3d. 1301, 1303.)

8

Defendant notes that the sergeant testified that it was *possible* that the fresh smell of marijuana was coming from the empty mason jar. Defendant concludes this fact impermissibly conflicts with the trial court's finding that Bennett's statement was "inconsistent with the personal observations of the officer." However, Sergeant Hall qualified his response by saying that the odor was stronger than what would be expected from an empty mason jar with marijuana residue. Further, Hall's observations of Bennett's nervous behavior and equivocal response, "[n]ot that I know," when asked if there was anything illegal in the Jeep contributed to his reasonable belief the vehicle contained an unlawful amount of marijuana. Bennett's deceptive statements concerning the source of the odor of marijuana, coupled with these other observations, constitute the "additional evidence" required by *Lee*. (*Lee*, *supra*, 40 Cal.App.5th at p. 862, italics omitted.)

Defendant continues by arguing that Sergeant Hall's testimony that the area of the encounter was a "high crime area" is insufficient by itself to establish reasonable suspicion, let alone probable cause to search the Jeep. We recognize that California courts have traditionally been skeptical of the high-crime factor in determining probable cause. (*People v. Aldridge* (1984) 35 Cal.3d 473, 478-479; *People v. Loewen* (1983) 35 Cal.3d 117, 124; *People v. Bower* (1979) 24 Cal.3d 638, 645.) However, while certainly not enough on its own, "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely. [Citations.]" (*United States v. Rickus* (3d Cir. 1984) 737 F.2d 360, 365.)

Defendant also argues that his act of leaning into the open door of the Jeep and walking away when Sergeant Hall parked his police cruiser and approached was not sufficient by itself to establish probable cause. We agree. This court has held that "[w]here an officer makes no observation of conduct objectively suggesting criminal activity, the mere avoidance of police officers by a citizen cannot justify a detention. [Citation.] A fortiori, the citizen's avoidance of officers cannot justify a warrantless search. [Citations.]" (*People v. Huntsman* (1984) 152 Cal.App.3d 1073, 1091.) However, Hall did not rely solely on this observation to either detain defendant or initiate

9

a search of the Jeep. Once again, taken in isolation this factor would not support probable cause, but Hall was justified in considering defendant's actions among the broader totality of circumstances, specifically Bennett's nervous behavior and statements inconsistent with Hall's observations.

Finally, defendant argues that Bennett's nervousness and suspicious reply, "[n]ot that I know of," when asked if there was anything illegal in the Jeep, is insufficient by itself to establish probable cause under the automobile exception to the warrant requirement. Nervous, evasive behavior is undoubtedly a potentially significant factor to be considered in determining whether probable cause (or reasonable suspicion) exists. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 576], 124; *In re H.M.* (2008) 167 Cal.App.4th 136, 144; *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1058, fn. 5.; *People v. Evans, supra,* 200 Cal.App.4th at p. 754.) Nervousness by itself, however, does not establish probable cause. (*People v. Valenzuela* (1994) 28 Cal.App.4th 817, 831; *People v. Raybourn* (1990) 218 Cal.App.3d 308, 312 ["Mere nervous, furtive, or evasive conduct in the presence of police will not justify a detention"].) Here, there was more than mere nervousness by itself.

Based on the totality of the circumstances, we conclude Sergeant Hall possessed probable cause to search the Jeep for an unlawful quantity of marijuana. The encounter occurred in a "high crime, high drug activity park." Defendant was leaning into the open passenger's side door of the Jeep and walked away as Hall approached the vehicle. Bennett opened the driver's door and the strong smell of "fresh marijuana" emanated from the interior of the car which was inconsistent with Bennett's explanation that the source of the smell was due to his recently having smoked and/or an empty mason jar with what appeared to be marijuana residue. Based on Hall's extensive experience and training, he reasonably believed that Bennett was lying about the source of the smell. Bennett was nervous, and when asked if there was anything illegal in the Jeep, he responded "[n]ot that I know of," which raised additional suspicion in the officer. These are all part of the "historical facts" of the interaction which, "viewed from the standpoint of an objectively reasonable police officer, amount[ed] . . . to probable cause." (*Ornelas*

10

*v. United States*, *supra*, 517 U.S. at p. 696.)  Given, that Hall possessed probable cause to search the Jeep for an unlawful quantity of marijuana, it follows that he could conduct a probing search of all "compartments and containers within the vehicle whose contents are not in plain view," including defendant's backpack.  (*United States v. Ross, supra*, 456 U.S. at p. 800.)

DISPOSITION

    The judgment is affirmed.


                    /s/
                    HOCH, J.


We concur:


 /s/
ROBIE, Acting P. J.


 /s/
MAURO, J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| THE PEOPLE, | C090220 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE000327) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| JEMONDRE DIONTE MOORE, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |


APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General for Plaintiff and Respondent.


THE COURT:


The opinion in the above-entitled matter filed on April 26, 2021, was not certified

for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:


 /s/
ROBIE, Acting P. J.


 /s/
MAURO, J.


 /s/
HOCH, J.