Filed 5/20/21  P. v. Kwon CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NIKKI KWON,<br><br>    Defendant and Appellant. | B303306<br><br>(Los Angeles County<br>Super. Ct. No. BA478543) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Elliott Veals, Judge.  Affirmed.

    Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

    Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Nikki Kwon was convicted of one count of assault with a deadly weapon, and one count of trespass and refusing to leave private property. The trial court sentenced Kwon to an eight-year prison term on the assault conviction, and a concurrent six-month jail term for the trespass.

At trial, the People maintained that Kwon committed the instant offenses when she attacked a security guard at a church community center after the guard had asked her to leave the premises. On appeal, Kwon claims the trial court erred in issuing an instruction supposedly suggesting she was responsible for her trial counsel's belated disclosure to the People of photographs purportedly depicting a bruise she sustained during the incident in question. Kwon asserts that the instruction prejudiced her by diminishing the value of the photographic evidence supporting her self-defense theory. She further argues the lower court erroneously admitted evidence of a prior uncharged trespass at a different church. Kwon also contends that the cumulative effect of these alleged errors warrants reversal.

We conclude that any purported instructional error was harmless because Kwon fails to demonstrate that absent this error, it was likely that the outcome of the trial would have been more favorable to her. As set forth in our Discussion, Kwon's self-defense evidence was weak relative to the evidence that the photographs depicted a preexisting injury, as bolstered by her own contradictory testimony that she did not know whether the security guard caused her to sustain the bruise. In addition, Kwon fails to make an affirmative showing that, had evidence of the prior uncharged trespass been excluded, there is a reasonable probability she would have obtained a more favorable result at

2

trial.  Lastly, Kwon fails to support her claim of cumulative error. We thus affirm.

## PROCEDURAL BACKGROUND

On October 3, 2019, the People filed a second amended information charging Kwon with one count of assault with a deadly weapon, in violation of Penal Code[1] section 245, subdivision (a)(1) (count 1); and one count of trespass and refusing to leave private property, in violation of section 602, subdivision (o) (count 2).  On October 10, 2019, the jury found Kwon guilty on both counts.  On December 26, 2019, the trial court imposed a state prison term of eight years on count 1, and a concurrent six-month jail term on count 2.  Kwon timely appealed the judgment of conviction.

## FACTUAL BACKGROUND

We summarize only those facts relevant to this appeal.

1.    **The People's Evidence**

A.    *The instant offenses*

On June 9, 2019, a small children's carnival was held in the parking lot of St. Basil Korean Catholic Church's community center.  At approximately 10:30 a.m., a longtime member of the church saw Kwon in the community center's dining room; Kwon was not a member of the church.  The event ended at around noon.  Church members started cleaning up the event at around 1:30 p.m.

---

[1] Undesignated statutory citations are to the Penal Code.

Shortly after 2:00 p.m., a 77-year-old security guard, K.K., approached Kwon in the dining room and asked her to leave. K.K. carried a metal baton as he approached Kwon, which he did not raise or use in a threatening manner. Although Kwon stated that she could not leave because she had leg pain, K.K. did not see any injury to Kwon's leg and had seen her walking around earlier that day. After K.K. offered to help Kwon walk, Kwon initially cooperated by placing her palm above K.K.'s forearm and following him into another room on the premises.

Kwon then sat in a chair. K.K. placed the baton onto a table and asked Kwon to leave. Kwon tilted back and forth, and she started to fall out of the chair. K.K. put his baton on the floor and tried to catch Kwon. Because K.K. did not have enough strength to hold Kwon, the two of them fell to the ground, and K.K. landed on Kwon.[2]

Kwon cursed at K.K., grabbed his baton, and hit K.K. twice in the right temple area of his head. K.K. felt "dazed" and started bleeding. Kwon did not move and continued to swear at K.K. Two individuals entered the room and helped K.K. walk outside. One of the individuals called an ambulance, whereas the other called the police. K.K. later went to the hospital and did not stop bleeding until he received five stitches on his head.

When the police arrived, Kwon's clothes were covered in blood, and she appeared to be disgruntled and confused. She was uncooperative and refused to answer the officers' questions.

---

[2] K.K. testified that he weighed about 145 pounds on the day of the incident, and the parties stipulated that he is 5 feet 6 inches tall. An officer who later arrested Kwon testified that on June 9, 2019, Kwon weighed approximately 140 pounds and was about 5 feet 4 inches tall.

Kwon yelled incoherent statements and claimed that she was the victim. Officers decided to detain Kwon and, although she initially resisted their efforts to handcuff her, Kwon was ultimately handcuffed.

Despite Kwon's claims that the blood on her was her own, paramedics found no injury on her. The police ultimately arrested Kwon and transported her to a hospital. The hospital staff examined Kwon and found a scab on her head. After Kwon's examination at the hospital, she was cleared for booking.

### B. *Kwon's prior trespass*

Before the People introduced evidence of Kwon's prior trespass, the trial court issued the following instruction to the jury: "Evidence will be introduced for the purpose of showing the defendant committed a crime other than that for which she is on trial. This evidence, if believed, may not be considered by you to prove that the defendant is a person of bad character or that she has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show a characteristic method, plan, or scheme in the commission of criminal acts similar to the method, plan, or scheme used in the commission of the offense in this case which would further tend to show the existence of the intent which is a necessary element of the crime charged or a clear connection between the other offense and the one of which the defendant is accused, that it may be inferred, that if the defendant committed the other offense, the defendant also committed the crime charged in this case. [¶] The existence of the intent which is a necessary element of the crime charged, a motive for the commission of the crime charged, the defendant had knowledge or possessed the means that might have been useful or necessary for the commission of the crime

5

charged, or the crime charged is part of a larger continuing plan or scheme. [¶] For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in this case. You are not permitted to consider such evidence for any other purpose."[3]

On the morning of October 12, 2018, Kwon arrived at Onesimus Ministries. Kwon, who was not a member of that church, asked one of the pastors for assistance. Kwon appeared to be confused and was acting erratically; she paced back and forth, and frequently walked into and out of the restroom. While Kwon was in the restroom, an assistant pastor could hear that Kwon was opening and closing cabinets.

After the pastor asked Kwon to leave, she seemed frustrated and acted as if she had no intention of leaving. The pastor asked Kwon to leave several more times. The assistant pastor told Kwon that if she did not leave, then she was trespassing. The assistant pastor thereafter called the police, and an officer arrived within five minutes.

The officer repeatedly asked Kwon to leave the premises, but she refused to do so. The officer then tried to put restraints on her. Kwon resisted by pulling away from the officer. The officer then "took her to the ground," and Kwon continued to resist by attempting to pull away from him. The officer acted in a "professional" manner throughout the entire incident.

## 2. The Defense's Evidence

An attorney who represented Kwon at her arraignment on June 12, 2019 (arraignment attorney) claimed that on the date of

---

[3] The trial court issued a substantially similar version of this instruction shortly before submitting the matter to the jury.

that hearing, the attorney took pictures of Kwon's alleged injuries. According to the arraignment attorney, she took pictures of a bruise on Kwon's left arm that was about 3 inches long and 2 and a half to 3 inches wide. Counsel stated that she took several photographs of Kwon's neck because Kwon had complained of pain in that area. The arraignment attorney further testified that she could not recall whether she had seen any bruising or abrasions on Kwon's neck.[4]

Kwon testified in her own defense.[5] As she walked by the community center on June 9, 2019, a woman standing outside the premises invited Kwon to come inside and stated that food was being served therein. Kwon suggested in her testimony that she intended to go to the community center that day to ask for help in protecting her from her abusive boyfriend.

Kwon later began eating a meal in the dining area. K.K. shook his baton as he approached Kwon. K.K. then "flipped" Kwon's soup as he "pulled out" her chair. Kwon told K.K. that after she finished her meal, she intended to have a conversation with the woman who had invited her in, and K.K. responded, "Is that right?" and backed away.

Later, the woman who had ushered Kwon onto the premises went outside with Kwon, and Kwon asked the woman whether the church had any domestic violence programs. Kwon telephoned a friend to pick her up, and then sat in a chair and waited.

---

[4] The photographs of Kwon's purported injuries are not in the record before us.

[5] The remainder of this paragraph and the following four paragraphs summarize pertinent aspects of Kwon's testimony.

K.K. thereafter took out his baton and struck Kwon on her arm. Kwon screamed because the blow was quite painful.[6] K.K. then struck Kwon in the back of her neck and on her head. K.K. twisted Kwon's arm and pushed her up against a table. K.K. then pulled Kwon backward, twisted Kwon's other arm, and pulled Kwon onto her feet. K.K. pushed Kwon's shoulders, causing her to fall backwards and hit her head.

While Kwon was on her back, K.K. put his knee on her stomach and choked Kwon with both hands. K.K. then began to choke Kwon with one hand, and Kwon believed that K.K. intended to use his other hand to grab his baton and hit her again. To prevent K.K. from doing so, Kwon grabbed the baton and hit him "once or so." At some point while K.K. was on top of Kwon, he gradually lifted Kwon's skirt. When a man who was nearby eventually told K.K. to stop choking Kwon, K.K. "all of a sudden stood up and then went outside."

## DISCUSSION

### I.    Kwon Fails to Establish the Trial Court Committed Reversible Error in Providing CALJIC No. 2.28 to the Jury

Before submitting the matter to the jury, the trial court issued a version of CALJIC No. 2.28 that read as follows: "The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial.

---

[6] Kwon testified that although K.K. attacked her, he did not explicitly tell her to leave the premises.

8

Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence. [¶] Disclosure of evidence is required to be made at least thirty days in advance of trial. Any new evidence discovered within thirty days of trial must be disclosed immediately. In this case, the defendant failed timely to disclose the following evidence: photographs of defendant's purported injuries to her body. [¶] Although the failure by the defense timely to disclose evidence was without lawful justification, the court has nonetheless permitted the production of this evidence during the trial. [¶] If you find that the delayed disclosure was by the defendant personally, or was authorized by or done at the direction and control of the defendant and relates to a fact of importance rather than to something trivial and does not relate to subject matter already established by other credible evidence, you may consider the delayed disclosure as evidence tending to show the defendant's consciousness of guilt or defendant's consciousness of the lack of believability of the evidence presented in violation of the duty to make disclosure. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

Kwon concedes that her trial counsel failed to provide the People with the arraignment attorney's photographs at least 30 days before trial. Nevertheless, Kwon contends the trial court erred in instructing the jury pursuant to CALJIC No. 2.28 because there was no evidence that the People were prejudiced by the delayed disclosure of the photographs or that Kwon personally caused the delay. Kwon also argues the People exacerbated the trial court's error by stating the following in

9

their rebuttal argument: "[T]he defense photos of Ms. Kwon's alleged injuries . . . . were not turned over to the People until October 3rd, the day jury selection began. And why is that? Because the defendant's last ditch effort to stick any kind of evidence that they have to complete her story [*sic*] . . . ."[7] We need not decide whether the trial court committed instructional error because Kwon failed to demonstrate that she was prejudiced by any such error.

The parties agree that the *Watson*[8] standard of prejudice applies to Kwon's claim of instructional error. "Under this standard, the [defendant] bears the burden to make an 'affirmative showing' " that " ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." [Citation.]' " (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533; *ibid.* [noting that this harmless error standard "applies in both criminal and civil cases"]; *People v. Breverman* (1998) 19 Cal.4th 142, 178 (*Breverman*).) " ' "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.]' [Citation.]" (See *Conservatorship of Maria B.*, at p. 532.) Further, "[a]ppellate review under *Watson* . . . . focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to

---

[7] Kwon does not argue that this passage from the People's rebuttal argument amounts to prosecutorial misconduct. Instead, it seems that Kwon is offering this statement to show the People had urged the jury to interpret the instruction as suggesting that Kwon was personally responsible for the delay in disclosing the photographs.

[8] *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

have done in the absence of the error under consideration." (*Breverman*, at p. 177.) "[We] may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (See *ibid.*)

Kwon contends that the jury instruction "dramatically reduced the value" of the photographs by allowing the jury to infer that the delayed disclosure tended to show Kwon's consciousness of guilt or her consciousness of the lack of believability of this evidence. She further claims the photographs "substantiated her testimony that she hit [K.K.] in self defense only after he had hit her and was on top of her," and that, without them, "there was no evidence . . . which supported her testimony."

We conclude that even if, for argument's sake, the trial court should not have instructed the jury pursuant to CALJIC No. 2.28, particularly its adverse inferences, Kwon's appellate claim fails because she has not established a reasonable probability that the jury would have found that the photographs substantiated her self-defense theory. As discussed in greater detail below, the evidence connecting the incident at the church to the pictures of the bruise on Kwon's left arm was weak.[9]

---

[9] Although Kwon claims that the arraignment attorney "took another picture of [Kwon's] neck because [Kwon] complained of pain in that area," Kwon concedes the attorney "stated that she could not recall seeing a bruise there." Further, Kwon does not claim that the photographs of her neck revealed any injuries on that part of her body.

Rather, the trial evidence suggests that the photographs depicted a preexisting injury.

On cross-examination, Kwon initially testified that one of the photographs depicted a bruise that K.K. had caused. Yet, later on during her cross-examination, Kwon indicated that she was unsure whether the bruise was from K.K.

Further, a transcript of the audio recording from an arresting officer's body camera video shows that Kwon told the officer that Kwon had been "beat[en] up" by her boyfriend, and that, shortly before Kwon made that assertion, she told the officer to "look at [her] arm."[10] Similarly, Kwon testified that prior to her altercation with K.K., she had "injuries on [her] head because [Kwon's boyfriend had] beat[en her] up in [her] sleep"; this testimony is consistent with the conclusion that her boyfriend—and not K.K.—had caused the bruise on her left arm.

Additionally, Kwon testified that she thought she asked for Tylenol before the church event began, and thus before K.K. had allegedly assaulted her. This is significant because one of the arresting officers testified that when Kwon told him she took Tylenol, she looked at a bruise on her left arm, thus carrying the implication that the bruise predated Kwon's encounter with K.K.[11] The arresting officer also testified that Kwon told the medical staff she was taking Tylenol for her bruise injury.

---

[10] The body camera video footage is not in the record before us. The transcript of the audio recording for that footage, however, is in the clerk's transcript.

[11] The arresting officer testified that Kwon stared at the bruise shown in People's exhibit 23B (another exhibit that is not in the record before us) when Kwon stated that she took Tylenol. Although Kwon intimated at one point during her testimony that

12

In sum, the evidence suggests that Kwon sustained the bruise on her left arm *before* her scuffle with K.K., and that the injury may have been inflicted by Kwon's abusive boyfriend. Conversely, it appears the only evidence potentially linking the bruise to the incident is the fact that Kwon's photographs showed she had the bruise three days after the incident, and Kwon's (later retracted) testimony that K.K. caused the injury. Given these facts, it is reasonable to infer that "the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (See *Breverman*, *supra*,

People's exhibit 23B depicted a bruise on her *right* arm, she shortly thereafter suggested that she misspoke and was actually referring to a bruise on her *left* arm. Further, Kwon does not dispute the Attorney General's assertions that: Kwon conceded at trial that People's exhibit 23B shows the same bruise depicted in Defense exhibit A, and the bruise shown in Defense exhibit A was on Kwon's left arm. Under these circumstances, we presume that Kwon was looking at her *left* arm when she told the arresting officer she was taking Tylenol. (See *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by the respondent was correct because the "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139 ["We must *presume all intendments and presumptions in favor of the judgment*, and ' " 'on matters as to which the record is silent, . . . error must be affirmatively shown.' " ' [Citation.]" Italics added].)

19 Cal.4th at p. 177.)  Because Kwon has not made an "affirmative showing" to the contrary, we reject her claim that the trial court's instruction requires reversal of her convictions. (See *Conservatorship of Maria B.*, *supra,* 218 Cal.App.4th at pp. 532–533.)

## II.   Kwon Fails to Demonstrate the Trial Court Committed Reversible Error in Admitting Evidence of Her Prior Trespass

Kwon claims the trial court erred in admitting the evidence of her prior trespass at Onesimus Ministries.  Although Kwon's argument in this regard is not altogether clear, she seems to contend that this evidence was not relevant to establish intent, motive, knowledge, or a common plan or design for the purposes of Evidence Code section 1101, subdivision (b).  (See also Evid. Code, § 1101, subd. (b) ["Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . . ) other than his or her disposition to commit such an act."].)  Assuming arguendo the trial court should have excluded this evidence, Kwon does not demonstrate that this error was prejudicial.

Kwon and the Attorney General agree that the *Watson* standard of prejudice applies to this claim of error.  Kwon fails to satisfy that standard.  Kwon does not even argue, let alone establish, there is a reasonable probability the jury would not have convicted her of the trespass charge if the trial court had excluded evidence of the incident at Onesimus Ministries.  Thus, we need not address this issue further.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal

14

argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.  [Citations.]' [Citations.]"].)

Second, Kwon contends that "the trial court[ ] fail[ed] to clearly inform the jury that it could only consider the uncharged trespass incident [in connection with] the current trespass charge," thereby "invit[ing] the jury to consider it when determining whether [Kwon] was guilty of assault with a deadly weapon."  Kwon does not even argue, as she must under *Watson*, that absent this purported instructional error, there was a reasonable probability that, had the jury not heard evidence of her prior trespass, she would not have been convicted of assault with a deadly weapon.  Nor is it apparent that evidence of the prior trespass "tipped the scales in favor" of the People such that, "but for the error, [Kwon] would have stood a reasonable chance of obtaining a more favorable verdict."  (See *Downing v. Barrett Mobile Home Transp.* (1974) 38 Cal.App.3d 519, 525 [discussing the *Watson* standard].)  According to Kwon, the trial evidence showed that at Onesimus Ministries, "[an] officer tried to put restraints on her[, Kwon] resisted[,] and the officer took her to the ground."  Although this evidence reflects poorly on Kwon, it does not demonstrate she has a propensity to perpetrate assaults.  Thus, there is—at most—an "*abstract possibility*" that Kwon would have secured a more favorable outcome if the trial court had excluded evidence of the prior trespass.  (See *Conservatorship of Maria B.*, *supra*, 218 Cal.App.4th at p. 532.)

Lastly, Kwon argues that "a juror could reasonably have concluded that the warnings in *CALJIC 2.28* not only applied to the trespass charge but also to the assault charge," and "a juror

15

could easily disregard [Kwon's] self defense argument since *the photos* were the only evidence to substantiate her claim that she acted, in fact, in self defense only after being assaulted herself." (Italics added.) To the extent this argument is comprehensible, evidence of Kwon's prior trespass has no apparent connection with the delayed discovery instruction found in CALJIC No. 2.28 or the photographs of Kwon's bruise, and Kwon does not further elaborate on her asserted relationship between the incident at Onesimus Ministries on the one hand, and CALJIC No. 2.28 and the photographs on the other. We thus do not address this argument further. (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 (*Evans*) [declining to address an argument that a party failed to support adequately].)

For the foregoing reasons, we conclude that even if the trial court erred in admitting evidence of Kwon's previous uncharged trespass, any such error was harmless.

## III. Kwon's Cumulative Error Claim Fails

In passing, Kwon argues vaguely that her convictions must be reversed because "the two [aforementioned alleged] errors taken together permitted the prosecution to paint [Kwon] in a negative manner that would not have been possible without the errors." (See also *People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436 ["A claim of cumulative error is in essence a due process claim and is often presented as such [citations]. 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' [Citation.]"].) This appellate claim fails because Kwon does not provide any further analysis to support it. (See *Evans*, *supra*, 200 Cal.App.4th at p. 756, fn. 12.)

16

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


                                    BENDIX, Acting P. J.


We concur:



       CHANEY, J.



       FEDERMAN, J.*

---

    **\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.