Filed 12/22/21  P. v. Sood CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VIKRAM SOOD,<br><br>    Defendant and Appellant. | B307247<br><br>(Los Angeles County Super. Ct. No. GA039246-01) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzette Clover, Judge.  Affirmed.

Douglas Jalaie for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Vikram Sood pleaded guilty under a negotiated plea agreement, reducing his sentencing exposure from life to 21 years in prison. Before his plea, he was told his conviction would result in deportation. Nineteen years later, he moved to vacate his conviction under Penal Code section 1473.7, subdivision (a)(1), arguing he did not understand the adverse immigration consequences of his plea.[1] The trial court denied his motion.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Sood's Negotiated Plea and Sentencing*

In February 2000, Sood was charged in an amended information with first degree residential robbery, two counts of first degree residential burglary, possession of a firearm by a felon, and kidnapping to commit robbery. It was alleged that Sood used a firearm and had previously committed a serious or violent felony. Sood faced a maximum sentence of 29 years to life, plus 17 years in prison.

In March 2000, Sood entered a negotiated plea. Under the plea deal, Sood pleaded guilty to a new count of kidnapping and admitted enhancements in exchange for a 21-year prison sentence and dismissal of the remaining counts.

During the plea hearing, the prosecutor explained the terms of the plea to Sood, confirming nobody threatened or offered Sood anything other than the deal to change his plea to guilty. Sood acknowledged and responded to all the inquiries.

Before Sood pled, the prosecutor advised Sood of his rights and the consequences of entering a plea, including adverse

---

[1]     Statutory references are to the Penal Code.

immigration consequences.[2]  And before she advised him, the prosecutor confirmed Sood understood that he could stop the proceedings if he did not understand:  "If you have any questions just say excuse me, and you will be able to talk to [your attorney] until you get your questions cleared up.  Okay?"  Sood responded, "Yes."

Then, the prosecutor explained Sood's rights, including his right to a jury trial, Sood confirmed he understood and waived his rights, and Sood's attorney joined in the jury trial waiver.

The prosecutor also warned Sood of the consequences of his plea, including deportation:  "If you are not a citizen of the United States entry of this plea will lead to deportation, denial of naturalization and denial of re-entry into this country."  Sood did not indicate he had any questions or concerns.

---

[2]     There is a clerical error in the appellate record.  The clerk's transcript contains the reporter's transcript from the plea hearing.  Three pages of the reporter's transcript are out of order in the clerk's transcript.  Read out of order, it appears the prosecutor told Sood about the adverse immigration consequences of his plea *after* he pleaded guilty.  But the reporter's transcript has its own pagination.  And read in the order of the reporter's transcript pagination, it is clear the prosecutor advised Sood of immigration consequences *before* he pled.

That Sood was advised about adverse immigration consequences before he pleaded guilty is consistent with the court's minute order.  According to the order, Sood was advised, "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the law of the United States."  Then the court found "that each waiver is knowingly, understandingly, and explicitly made."  And finally a "plea of guilty [was] entered" by Sood.

3

The prosecutor requested a moment with defense counsel off the record. When they were back on the record, the prosecutor asked to set Sood's sentencing on a future date.

Finally, the trial court took Sood's plea. Sood pleaded guilty to kidnapping, admitting that he used a firearm during the kidnapping, that he had a prior conviction, and that this plea violated his probation. Sood's attorney stipulated to a factual basis and concurred in the plea. The court accepted and approved the plea.

In April 2000, Sood was sentenced to 21 years in prison. Before the sentence was imposed, Sood "state[d] there is no legal cause why sentence should not be pronounced."[3]

B. *Sood's Motion To Vacate*

In January 2020, Sood filed a motion to vacate his conviction and sentence under section 1473.7. Sood argued he failed to meaningfully understand, defend against, or knowingly accept the consequences of his plea due to ineffective assistance of counsel[4] and because the court failed to advise him of the consequences under section 1016.5. Additionally, Sood argued, "although the Minute Order on page 6 states that [he] was advised of the immigration consequences . . ., the actual transcript of the hearing on page 8 indicates that the Deputy District Attorney read the immigration consequences advise[ment], but was then interrupted and never obtained any response from Mr. Sood." Sood argued these errors were prejudicial because he "swears that, had he

---

[3] The appellate record only contains the court's minute order from the sentencing hearing, not the reporter's transcript.

[4] On appeal, Sood no longer argues his plea counsel was ineffective.

4

known the consequences of deportation, he would have never pleaded guilty and subjected himself to deportation from the United States."

Sood also filed a declaration stating the following:

1. On March 15, 2000, I plead[ed] guilty to violating Penal Code section 207, a felony. At the time I was represented by Attorney Rickard Santwier.
2. At the time of my plea I was [sic] understood that my conviction would have some impact on my immigration status but not that it would ultimately bar me altogether from any possibility of remaining in the United States.
3. I had informed my attorney several times that me remaining in the United States was paramount, and that I would be willing to pursue trial if needed in order to insure [sic] this. However, the information provided to me was that of an assurance that ultimate deportation was avoidable.
4. On the day of my plea and sentencing I recall that I was read some information regarding whether I understood that I could be deported, however I was never provided an adequate opportunity to exercise any objections I may have had regarding this.
5. I am now detained with Immigration and Customs Enforcement and after retaining counsel I have been made aware that my deportation is guaranteed as a result of this conviction, and furthermore that I will be permanently banned from ever being able to return.
6. This was not my understanding and had I know [sic] this I would have definitely sough [sic] an alternative plea or even trial.

Sood did not include a declaration from Santwier or any other objective evidence to corroborate his claim that he did not understand the immigration consequences of his plea.

The People opposed the motion, arguing Sood failed to meet his burden of proof because the prosecutor's advisement to Sood that his conviction would lead to deportation satisfied any requirement the defense attorney had to advise Sood of immigration consequences.

C. *The Motion Hearing*

In July 2020, the trial court heard argument on Sood's motion. The court began by acknowledging the "problem" in this case: "Sood's case pre-dates the legislation and the case law that puts an extra duty, essentially, on defense counsel to explain the immigration consequences; and even in some instances, in open court." The court said, "I understand and believe that Mr. Sood would not have—potentially wouldn't have accepted the plea if he'd known that he would be deported." However, the court explained that "[t]he advisement here, it seems to me, was what's required by law" because "the admonishment, which is on the record, said [Sood] will be [de]ported." The court also acknowledged that Sood was saying "if he had known he would have been deported, that he wouldn't have accepted the plea," but the court pointed out that Sood's plea was "in the course of this really serious charge where he avoids a heavier sentence by accepting the plea."

In response, Sood argued the new "requirement is not only that the defendant be the recipient of the advise[ment] but that he acknowledges it and he understands it." Sood acknowledged "[h]e was a recipient, but they never got an answer. If you don't get an answer, you would be hard-pressed to assume he understood it."

The People argued that Sood, in his declaration, acknowledged that he was read "'some information'" regarding whether he understood he could be deported. The People argued the prosecutor's pre-plea advisement of adverse immigration consequences "basically does the defense attorney's job for him." In the People's view, Sood failed to meet his burden on the motion to vacate because he did not establish his plea counsel gave him incorrect advice.

The court denied the motion. "It just seems to me that the record is such that it can be inferred that Mr. Sood understood before he pled that, as a result of the plea, he will be deported. . . . I just don't think there's enough here for me to grant the motion."

## DISCUSSION

Sood argues the "sole issue on appeal is whether [he] understood the immigration consequences when he accepted the 'plea deal' on this case."

We disagree. To vacate his conviction under section 1473.7, subdivision (a)(1), Sood had to establish not just error—that he did not understand he would be deported—but prejudicial error—a reasonable probability that if he had understood he would be deported, he would not have pleaded to the negotiated deal. Because Sood failed to prove prejudicial error by a preponderance of the evidence, we affirm.

A. *Relevant Law*

Under section 1473.7, subdivision (a)(1), a defendant may vacate a sentence or conviction if the defendant establishes a prejudicial error that prevented the defendant from understanding, defending against, or knowingly accepting the immigration consequences of the defendant's plea: "A person who is no longer in criminal custody may file a motion to vacate a

7

conviction or sentence [because] [t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."

A party seeking relief under section 1473.7, subdivision (a)(1), must make two showings:  (1) an error "damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the plea, and (2) prejudice.[5]  (*People v. Vivar* (2021) 11 Cal.5th 510, 528 (*Vivar*).)  "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.  When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances."  (*Vivar*, at pp. 529-530.) "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible."  (*Ibid.*)

The moving party must establish a ground for relief by a preponderance of the evidence under section 1473.7.  (§ 1473.7, subd. (e)(1).)  "[W]hen a defendant seeks to withdraw a plea based

---

[5]    There are other requirements that must be met when moving to vacate a conviction under section 1473.7, subdivision (a)(1).  (§ 1473.7, subds. (b)(2), (e)(1).)  But we need not address those requirements in this case since they are not challenged and appear to have been met.

on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with "'objective evidence.'"'" (*Vivar*, *supra*, 11 Cal.5th at p. 530.)

"[T]he only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (e)(4).)

B. *Standard of Review*

We review the denial of a section 1473.7 motion independently. (*Vivar*, *supra*, 11 Cal.5th at pp. 524-525.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'" (*Id.* at p. 527.) The motion is reviewed independently because of "the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence." (*Ibid.*)

We need not defer to the trial court's findings when the evidence is documentary. When "the facts derive entirely from written declarations and other documents [. . .] there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Vivar*, *supra*, 11 Cal.5th at p. 528.)

C. *Sood Failed To Establish Prejudicial Error*

We need not decide whether Sood established he did not understand the immigration consequences of his plea because even if he did, he failed to establish prejudice. Specifically, he did not prove by a preponderance of the evidence that had he known his conviction would lead to deportation, he would not have pleaded guilty under the negotiated deal but rather risked life in prison.

Although Sood claimed he would not have accepted the plea if he had known he would be deported, he did not support that claim with any corroborating objective evidence. In his motion, Sood "[swore] that, had he known of the consequence of deportation, he would have never pleaded guilty and subjected himself to deportation," citing to his declaration. But nothing in the record corroborates this statement. Sood did not include a declaration from his plea counsel or even details in his own short declaration. Moreover, there was no discussion about whether an immigration-neutral resolution was requested or even possible. On the contrary, that Sood avoided life in prison for the charges he faced suggests his plea was well negotiated and strategic. On this record, it is not reasonably probable that Sood would have rejected a deal that substantially reduced his sentence.

Sood contends the trial court found him credible and assumed he had proven prejudice. To begin with, we need not defer to the court's findings because the evidence is documentary. (*Vivar*, *supra*, 11 Cal.5th at pp. 524-525, 527-528.) And in any case, the court did not find that Sood established prejudice. Although the court equivocated, it ultimately found Sood did not meet his burden. The court said, "I understand and believe that Mr. Sood would not have—potentially wouldn't have accepted the plea if he'd known that he would be deported." The court also said, "What [Sood is] saying is that if he had known he would have been

10

deported, that he wouldn't have accepted the plea." But the court explained that the plea was made "in the course of this really serious charge where [Sood] avoid[ed] a heavier sentence by accepting the plea." Ultimately, the court concluded, "It just seems to me that the record is such that it can be inferred that [Sood] understood before he pled that, as a result of his plea, he will be deported. . . . I just don't think there's enough here for me to grant the motion."

Sood's reliance on *People v. Jung* (2020) 59 Cal.App.5th 842 (*Jung*), disapproved on another ground in *Vivar, supra,* 11 Cal.5th at p. 526, fn. 4, and *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*) is misplaced. Both cases are distinguishable.

In *Jung,* the court of appeal reversed the denial of a section 1473.7 motion even though the defendant signed and initialed two plea forms next to the clauses advising her of immigration consequences and confirming she read and understood each clause. (*Jung, supra,* at pp. 848, 857-858.) The defendant testified and provided significant details surrounding her plea: She had signed and initialed the plea form while in a holding cell next to the courtroom; she did not ask her attorney to explain the form because she "'assumed that he knew what was best for [her]'"; she did not previously speak to an immigration attorney and did not know what consequences her plea would have; she explained she never asked questions regarding the immigration consequences once she learned of them because she "'felt trapped'" and was "'too intimidated.'" (*Jung,* at pp. 857-858.) Additionally, she provided contemporaneous evidence to bolster her claims by explaining her background, where she came from, her life, family, friends, and other ties to the United States. (*Id.* at p. 858.) The defendant's attorney also submitted a declaration explaining that the defendant was overcharged: "'[M]any of the criminal charges went

11

beyond the available evidence or the severity of the alleged offense.'" (*Ibid.*)

In *Mejia*, the court of appeal reversed the denial of a section 1473.7 motion, even though the defendant had initialed the immigration advisement on the plea form. The defendant said in his declaration that "he would have never pleaded guilty had he known and understood 'that this would harm [him] in the future.'" (*Mejia, supra*, 36 Cal.App.5th at pp. 865, 872.) There, the contemporaneous evidence to support the defendant's declaration was his own life story—his relationship with the United States and his current ties to the country—in addition to a transcript from the preliminary hearing, which made the court question the strength of the prosecution's case. (*Id.* at pp. 872-873.)

Here, the only evidence that Sood would not have pleaded guilty if he had known he would be deported (assuming he did not know) was his bare-bones declaration. And in the declaration, there are no details to substantiate his claim that it was "paramount" for him to remain in the United States. Nothing in the record explains when he first came to the United States or where he was born, what his ties are to this country or his country of birth, or any other detail to support a reasonable probability that he would not have taken the plea deal. Although his motion argues his entire family lived in the United States at the time of his plea, there is no evidence of that.

Additionally, there was evidence that the prosecution's cases were weak against Jung and Mejia. But here, no weakness has been identified.[6] Moreover, in *Jung* and *Mejia,* the defendants

_____

[6]    Sood contends the People cannot argue against a finding of prejudice on appeal because they never made that argument in the

12

faced only marginally longer sentences than their plea deals.  But here, Sood faced life in prison and was sentenced to only 21 years under his negotiated deal.

## DISPOSITION

The trial court's order denying Sood's motion to vacate his conviction is affirmed.


IBARRA, J.*


We concur:


PERLUSS, P. J.


SEGAL, J.

---

trial court.  But this matter is reviewed independently, and "[w]e will affirm the trial court's ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court."  (*People v. Evans* (2011) 200 Cal.App.4th 735, 742.)

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.