Filed 6/17/24  P. v. Romero CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B330046 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA140096) |
| v. | |
| AMILCAR JESUS ROMERO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Amilcar Jesus Romero, convicted in 1997 of two counts of attempted murder, appeals from the denial of his resentencing petition under Penal Code[1] section 1172.6. The resentencing court found defendant had not made a prima facie showing for relief because, inter alia, his jury had not been instructed on the natural and probable consequences, felony murder, or any other theory of imputed malice.

On appeal, defendant contends the prosecutor at his trial made statements in closing that effectively instructed the jury on the natural and probable consequences doctrine. We conclude the prosecution's statements would not have led the jury to believe it could convict defendant without a finding of malice.

Accordingly, we affirm.

## FACTUAL BACKGROUND

To provide context for the charges and arguments in this case, we briefly summarize a portion of the testimony from defendant's trial.

On October 21,1996, Richard Rhee was on his way to the bank to deposit $470,000 in cash, food stamps, and checks from the markets he owned. Rhee was driving in his Cadillac, accompanied by two security guards each driving their own vehicles, a Ford Taurus and a Lexus.

A yellow car suddenly struck Rhee's car, then struck one of the security guard's cars. Defendant got out of the yellow car armed with a shotgun and began shooting towards Rhee. Rhee saw people inside a van also shooting at him.

---

[1] Unspecified statutory citations are to the Penal Code.

2

Rhee was armed and fired back, as did the security guards. Defendant dropped his shotgun and ran away, limping. The van drove off.

Police found defendant lying in the bushes, bleeding from his upper thigh.

## PROCEDURAL BACKGROUND

### 1.    *Conviction*

An information charged defendant with two counts of attempted willful, deliberate, and premeditated murder, two counts of shooting at an occupied motor vehicle, one count of attempted second degree robbery, three counts of assault with a firearm, and one count of assault with a deadly weapon and by means of force likely to produce great bodily injury. The information further alleged firearm and prior conviction enhancements, as well as a prior strike supporting sentencing under the "Three Strikes" law.

The trial court instructed the jury on all charges and provided an instruction on aiding and abetting liability. That instruction provided, in relevant part, "A person aids and abets the commission of a crime when he, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime, . . . [¶] (3) by act or advice aids, promotes, encourages or instigates the commission of the crime." The attempted murder instruction required, inter alia, that "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The trial court did not instruct the jury on implied malice or on

3

the felony murder or the natural and probable consequences doctrine.

The trial court further instructed the jury, "If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions."

On April 17, 1997, the jury found defendant guilty of the two attempted murders, but could not reach a verdict as to whether the attempted murders were willful, deliberate, and premeditated. The jury acquitted defendant of one of the two counts of shooting at an occupied vehicle. The jury found defendant guilty of all other charges and found the firearm allegations true. The trial court found the prior conviction allegation to be true.

The trial court sentenced defendant to 44 years 4 months in prison. We affirmed the judgment on direct appeal, rejecting defendant's sole argument that the prior conviction finding was not supported by substantial evidence. (*People v. Romero* (Jun. 30, 1998, B112947) [nonpub. opn.].)

## 2.     *Petition for resentencing*

On October 24, 2022, defendant filed a petition for resentencing under section 1172.6.[2] The resentencing court appointed counsel and the People filed opposition to the petition. Following a hearing at which the defense presented no additional argument, the resentencing court denied the petition. The court

---

[2] The form petition listed former section 1170.95 as the applicable statute, but by October 2022, that section had been renumbered without substantive change as section 1172.6. (See *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)

stated, "[I]t looks like the defendant was found guilty of willful, premeditated, deliberate attempted murder, plus it was found true that he personally used the firearm during the commission of that crime. [¶] Looking at the jury instructions, there was no natural and probable consequence [instruction] given, nor was there any theory in which responsibility can be imputed, and [defendant] was the actual shooter."

Defendant timely appealed.

## DISCUSSION

### A. Governing Law

Under the natural and probable consequences doctrine, " ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime." ' [Citation.] 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' [Citation.]" (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) Pursuant to this doctrine, a defendant could be convicted of murder without proof of malice aforethought. (*People v. Lee* (2020) 49 Cal.App.5th 254, 260.)

In 2018, the Legislature amended the Penal Code to eliminate the natural and probable consequences theory of murder by providing, " 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173 (*Lee*), quoting § 188, subd. (a)(3).) The Legislature also amended section 189 to limit

5

the scope of the felony murder rule. (*Lee*, at p. 1173.) The Legislature further enacted former section 1170.95, now numbered 1172.6, which created a procedure by which defendants who no longer could be convicted after the changes to the Penal Code could seek resentencing retroactively. (*Lee*, at p. 1173.) The current version of the statute provides relief to those convicted of murder, attempted murder, or manslaughter under the natural and probable consequences doctrine, the felony murder rule, or any " 'other theory under which malice is imputed to a person based solely on that person's participation in a crime.' [Citation.]" (*Id.* at p. 1174.)

"If a petitioner makes a prima facie showing of relief under section 1172.6—that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code—the resentencing court must issue an order to show cause for an evidentiary hearing." (*Lee*, *supra*, 95 Cal.App.5th at p. 1174.) "If, however, the record of conviction or the court's own documents indicate the petitioner is ineligible for resentencing as a matter of law"—that is, the petitioner fails to make a prima facie showing of eligibility for relief—"the resentencing court may deny the petition without issuing an order to show cause." (*Ibid.*) We review de novo the resentencing court's finding that a defendant has not made the requisite prima facie showing. (*Ibid.*)

## B. Defendant Is Ineligible for Relief as a Matter of Law

In the instant case, the trial court did not instruct the jury on any theory of imputed malice, including the natural and probable consequences doctrine or felony murder. Defendant contends that the prosecution's statements during closing argument effectively instructed the jury on the natural and

6

probable consequences doctrine, thus suggesting the jury could convict defendant of attempted murder without a finding of malice. We disagree that the prosecutor's statements are sufficient to support prima facie eligibility under section 1172.6.

### 1. Additional background

Defendant identifies the following statement by the prosecutor during closing argument regarding the attempted murder counts: "Count I, count II he's guilty of, and it doesn't matter—the judge has told you that about the concept of aiding and abetting. It doesn't matter whether [defendant] fired the shots or some other people fired the shots. Because under the concept of aiding and abetting, if you know that another person is participating in a crime and you aid and abet him, you assist, you are just as liable for the consequences as that other person. [¶] That's the concept of aiding and abetting. So it doesn't matter who pulls the—who fires the gun. So if someone says, well, there's no proof that he fired the gun—even though there is. [One of the security guards] did say that the defendant fired at him. He fired several times. And he fired at him, and he shot his car that he was hiding behind at the time. The defendant shot it. But it doesn't really matter."

Later, when describing the series of events underlying the charges, the prosecutor stated, "So immediately after colliding with [the other security guard's] car they began shooting. They wanted to establish superiority, superiority of firearms by laying down some fire power to either kill or intimidate the security guards so that they would not fire back. That was the theory of the robbers. [¶] And you can see that when you look at [a particular trial exhibit], and you see how many shots the robbers fired. . . . [¶] These are all shots fired by the robbers. So you

7

know that at that point in time the robbers were just laying down fire power. They're just shooting holes into the Taurus, and then they were shooting at the Lexus, and they didn't care whether the people in those cars lived or died. In fact, they didn't care if the people in the neighborhood lived or died."

### 2. Analysis

Defendant focuses on the prosecutor's statement that "if you know that another person is participating in a crime and you aid and abet him, . . . you are just as liable for the consequences as that other person." Defendant argues this statement suggests "it didn't matter whether [defendant] had intent to kill, as long as he assisted 'another person . . . participating in a crime.'" Defendant argues the prosecutor reinforced this suggestion by his statement that the shooters "didn't care" whether the robbery victims "lived or died," which defendant contends suggested to the jury defendant was guilty even if he lacked intent to kill. Defendant asserts, "If anything, this is a formulation of the natural and probable consequences doctrine, *less* the requirement that a reasonable person could anticipate the possible commission of the nontarget offense."

As an initial matter, to the extent the prosecution's comments mischaracterized or deviated from the jury instructions, defense counsel could have objected at the time or defendant could have raised the issue on direct appeal. Courts have held that " '[s]ection 1172.6 does not create a right to a second appeal, and [defendant] cannot use it to resurrect a claim that should have been raised in his [direct] appeal.' [Citations]." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936, first bracketed insertion added.) Because we conclude defendant's arguments on the merits do not entitle him to relief, we will

8

assume arguendo he may raise them in this resentencing proceeding.

On the merits, we disagree the prosecutor's comments identified by defendant would lead the jury to believe it could convict defendant without a finding of malice. It is true that in the context of explaining, correctly, that defendant could be guilty of attempted murder even if he was not the shooter, the prosecutor did not mention the other elements of aiding and abetting, namely that defendant share the direct perpetrator's intent to kill. Defendant cites no authority, however, that a prosecutor misstates the law by discussing or emphasizing some elements and not others.

Nor did the prosecutor otherwise suggest that the jury could convict absent a finding that defendant had an intent to kill. The prosecutor's comment that the shooters did not care if their targets lived or died was not part of the discussion of aiding and abetting liability. Rather, it arose in an entirely different context in which the prosecutor was taking the jury step by step through the events underlying the charged offenses, and the prosecutor sought to convey dramatically the many bullets fired by the perpetrators. The prosecutor did not link his statement about the perpetrators not caring whether their victims lived or died to any element of the offense so as to suggest intent to kill was not a required element of attempted murder.

To the extent arguendo there was any tension between the prosecutor's statements and the jury instructions, our Supreme Court has stated, " 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a

9

judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." [Citation.]' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 676 (*Centeno*).) Indeed, in the instant case the trial court specifically instructed the jury, "If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions." The presumption stated in *Centeno,* along with the trial court's express instruction to follow its articulation of the law rather than the attorneys' articulation, further reinforces our conclusion the prosecutor's statements here would not have led the jury to conclude it could convict defendant of attempted murder without a finding of intent to kill.

Defendant notes that in *Centeno*, the Supreme Court concluded a prosecutor's misstatements of the law required reversal of the judgment, despite the general presumption that the jury follows the jury instructions over the attorneys' statements of the law. (*Centeno*, *supra*, 60 Cal.4th at pp. 677–678.) In *Centeno*, the prosecutor during closing argument misrepresented the reasonable doubt standard, first by explaining the standard using a diagram and hypothetical situation with no relationship to the facts of the case, and then by suggesting in argument the prosecution could meet its burden so long as its account of the evidence was reasonable. (*Id*. at pp. 670, 673.) Defense trial counsel did not object to the prosecutor's argument. In addressing ineffective assistance of counsel, our high court concluded the prosecutor's misconduct in misdescribing her burden of proof was prejudicial in a close case that relied on the victim's credibility and in which the victim's

10

testimony changed throughout trial and she refused to answer questions.  (*Id.* at p. 677.)

In contrast, here, defendant has identified a single comment by the prosecutor in which he provided an incomplete summary of the elements of aiding and abetting, and an unrelated comment about the perpetrators not caring if the victims lived or died.  This is not comparable to *Centeno*, in which the prosecutor engaged in a detailed yet legally erroneous discussion purporting to instruct the jury on the reasonable doubt standard, complete with a diagram and hypothetical, followed by repeated misstatements of the applicable standard of proof.

Defendant also cites our decision in *People v. Fay* (2024) 101 Cal.App.5th 767 (*Fay*).  In *Fay*, the jury during deliberations twice asked the court for clarification of the implied malice instruction, and later reported they were deadlocked.  (*Id.* at pp. 771–772.)  The trial court allowed counsel to present supplemental argument, during which the prosecutor misstated the implied malice standard, relying on dictum from a 1985 Court of Appeal case that conflicted with later Supreme Court authority.  (*Id.* at pp. 772, 774–776.)  When the jury asked for the source of the standard stated by the prosecutor, the trial court, after conferring with counsel, informed the jury, " 'The statement of the attorney came from case law decisions and you are reminded that arguments of counsel are not evidence.' "  (*Id.* at p. 773.)  Less than an hour later, the jury found the defendant guilty of second degree murder.  (*Ibid.*)

We reversed the judgment.  (*Fay*, *supra*, 101 Cal.App.5th at p. 776.)  We observed that, based on the jury's questions to the court and the fact that they originally deadlocked, it appeared the jurors were divided as to the nature of implied malice.  (*Id.* at

11

p. 776.) Upon receiving the prosecutor's incorrect articulation of the law, the deadlock broke and the jury returned a guilty verdict. (*Ibid.*) "The prejudice," we concluded, "is unmistakable." (*Ibid.*) We also observed the trial court had compounded the error by informing the jury the prosecutor's standard was based on case law, thus "effectively endors[ing] the prosecutor's misstatement and g[iving] it the force of law on a par with the formal instructions the jury had received." (*Id.* at p. 776.)

*Fay* is not instructive here. The prosecutor in *Fay* made his misstatements in direct response to questions from the jury regarding the implied malice standard, after which the trial court essentially endorsed the standard by attributing it to case law. The previously deadlocked jurors returned a guilty verdict shortly thereafter. Under these circumstances, it was not only possible but probable the jurors embraced the prosecutor's incorrect implied malice standard over the trial court's original instructions.

The record contains no such indication here. Although the prosecutor in discussing aiding and abetting did not provide a full summary of the elements, he was not purporting to clarify an instruction about which the jury had asked or suggesting the jury should preference his articulation of the law over the instructions previously given by the trial court. Nor did the trial court endorse, expressly or implicitly, the prosecutor's statements. Thus, there is no reason to conclude the jury took the prosecutor's statements as the final word on aiding and abetting, as opposed to the trial court's unequivocal instructions on intent to kill as an element of aiding and abetting an attempted murder.

Defendant contends the resentencing court made two additional errors: first, it stated defendant had been convicted of

12

premeditated attempted murder, when in fact the jury had hung on the question of premeditation, and second, it concluded defendant, as an actual shooter, was ineligible for relief, a conclusion defendant argues is not consistent with the law that defendant claims distinguishes an "actual killer" from an "actual shooter." Assuming arguendo these findings were in error, they have no impact on our holding. We may affirm the trial court if correct on any theory, even for reasons other than those given by the trial court. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742.)

The resentencing court correctly found defendant's jury had not been instructed on the natural and probable consequences doctrine or any theory of imputed malice. We have further concluded the prosecutor's statements would not have misled the jury as to the elements of aiding and abetting so as to override the trial court's instructions. Defendant therefore was not convicted under a now-invalid theory, and is ineligible for relief as a matter of law.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:



ROTHSCHILD, P. J.                    WEINGART, J.


13